UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DAVID M. BOWIE,                     )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civil Action No. 03-948 (RCL)
                                    )
ALBERTO GONZALES,                   )
et al.                              )
                                    )
            Defendants.             )
_____)

**MEMORANDUM OPINION**

This case comes before the Court on Plaintiff's Omnibus Motion [64] for Reconsideration, Clarification and Relief, filed on behalf of David M. Bowie, appearing *pro se*. Plaintiff requests that the court reconsider plaintiff's Motion [45] for Leave to File Second Amended Complaint. Specifically, plaintiff seeks to join the following entities in their individual capacities: Jimmy C. Carter, for conspiracy pursuant to 42 U.S.C. §§ 1985(2), 1986; Gail Davis, for conspiracy under 42 U.S.C. § 1985(2); and Terrence Wyllie, alleging harassment and a hostile work environment.

For the reasons set forth herein, the plaintiff's motion will be denied.

**I. FACTUAL BACKGROUND[1]**

Plaintiff was employed from November 1997 to August 2002, as the Assistant Inspector

---

[1] When considering a motion to dismiss, a district court must accept the allegations of the complaint as true and construe all inferences in the plaintiffs' favor. *Crist v. Republic of Turk.*, 995 F. Supp. 5, 8 (D.D.C. 1998) (citing *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997); *Foremost-McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 440 n.3 (D.C. Cir. 1990)). Consideration of a motion to amend a complaint must proceed under the same theory. *Id*.

General for Investigations ("AIGI") for the District of Columbia Office of Inspector General ("DCOIG"). (Compl. 7.) Terrence Wyllie was hired in February of 1998. (Pl. Mot. 35.) During his employment, on June 21, 1999, plaintiff, Inspector General Charles C. Maddox, and Deputy Inspector General Austin A. Andersen, attended a meeting at the Federal Bureau of Investigations ("FBI") Washington Field Office ("WFO") Headquarters. WFO's Assistant Director in Charge, Jimmy C. Carter, also attended. At the end of the meeting, Carter took Maddox aside for a private conversation, where he "indicated that the FBI would not make its resources available to Maddox's office in any police corruption case because, in Carter's view, [Emmanuel] Johnson [a member of the IG's office] had a conflict of interest that might compromise his work." *Johnson v. Maddox*, 270 F. Supp. 2d 38, 40 (D.D.C. 2003).

In February 2000, plaintiff participated in a meeting involving himself, Maddox, Andersen, and plaintiff's deputy at the time Alfred Miller, regarding the unsatisfactory work performance of Emanuel Johnson.[2] (Compl. 13.) Remedial measures were considered, but ultimately, the decision was made to dismiss Johnson. (Compl. 16-17.) Plaintiff disagreed with this decision, but informed Johnson of his termination. (*Id.*)

On March 28, 2000, Johnson filed a discrimination complaint against Maddox and Carter, alleging wrongful termination. (Compl. 24.) Gail Davis, Deputy Attorney General for the Office of the Attorney General for the District of Columbia, was assigned, in May of 2000, to represent and draft a position statement for DCOIG in response to the discrimination complaint filed by Johnson. (Pl. Mot. Ex. 6.) Davis, unable to meet with plaintiff, drafted an affidavit regarding the February meeting on Johnson's performance based on facts learned from Maddox and Andersen. (*Id.*)

---

[2] Plaintiff, Carter, Wyllie, and Johnson had all previously worked in the FBI/WFO. Plaintiff and Johnson were involved in a class action lawsuit against the FBI, *Emmanuel Johnson, Jr. v. Reno*, Civ. No. 93-0206 (TFH).

Plaintiff, dissatisfied with the accuracy of the draft provided by Davis, prepared his own affidavit, which he submitted to Karen Bramson, DCOIG General Counsel. (Compl. 27.) Davis decided to submit the position statement without plaintiff's affidavit, as "it included too much information that was not relevant to the issue at hand," and which the plaintiff was unwilling to eliminate. (Pl. Mot. Ex. 6.)

On July 30, 2002, Andersen and Jerome Campane, Deputy Inspector General for Investigations, informed plaintiff that he was being terminated from DCOIG, with his last day of work to be August 2, 2002. (Compl. 48-49.) Plaintiff's official separation date was August 16, 2002. (Pl. Mot. 39.) Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") claim on February 25, 2003. (Compl. 49.)

Plaintiff alleges that Carter, Davis, and Wyllie, should be joined as defendants as, in concert with the currently named defendants, they participated in a conspiracy which involved the following objectives: the wrongful termination of Johnson, solicitation of plaintiff's cooperation through coercion and intimidation, and ultimately plaintiff's dismissal based on his refusal to cooperate. (Compl. 52.)

## II. DISCUSSION

### A. Standard of Review

"[L]eave [to amend a complaint] shall be freely given when justice so requires," under Federal Rule of Civil Procedure 15(a), providing there is an "absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-549 (D.C. Cir. 1999). The court may deny a motion to amend as futile if the proposed claim would not survive a motion to dismiss. *Crist*, 995 F. Supp. at 8; *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *Foman v. Davis*, 371 U.S. 178, 179 (1962); *Moldea v. New York Times*, 22 F.3d 310, 319 (D.C. Cir.), *cert.*

*denied*, 115 S. Ct. 202 (1994)). "Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted . . . and construing them in plaintiff['s] favor . . . the court finds that the plaintiff has failed to allege all the material elements of his cause of action." *Wadley v. Aspillaga*, 163 F. Supp. 2d 1, 5 (D.D.C. 2001) (quoting *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001) (internal citations omitted)).

The D.C. Circuit gives particular weight to whether amendment to the complaint would necessitate additional discovery, thereby prejudicing the defendant(s). *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996) (citing *Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1208 (D.C. Cir. 1993) (remanding to allow amendment where there would be no need for additional discovery); *Williamsburg Wax Museum*, 810 F.2d at 247-48 (affirming denial of leave to amend, more than seven years after the filing of the initial complaint, where new discovery would be necessary); *see also State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (reversing a denial of leave to amend where the new claim was closely related and there would be no need for "a great deal of additional discovery")).

**B. Carter**

Plaintiff seeks to join Carter as a defendant for conspiracy, pursuant to 42 U.S.C. §§ 1985(2), 1986. (Pl. Mot. 10.)

**1. 42 U.S.C. § 1985**

In relevant part, § 1985(2) proscribes conspiracies to "deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified." 42 U.S.C. § 1985(2). The cause of action for damages for those harmed by the conspiracies prohibited by § 1985 (in its entirety) are contained in § 1985(3). *Haddle v. Garrison*, 525 U.S. 121, 125 (U.S.

1998) (citing *Kush v. Rutledge*, 460 U.S. 719, 724-725 (1983) (listing the various conspiracies that § 1985 prohibits)).

Plaintiff does not any allege facts which support a claim that Carter used coercion or intimidation of any kind to prevent him from either attending or testifying before any federal court. Plaintiff further does not allege any actions on the part of Carter which were geared towards plaintiff being terminated from his position at DCOIG. While "third-party interference with at-will employment relationships" qualifies as a harm redressable under § 1985(2), plaintiff does not allege Carter interfered with his employment, only that of Johnson. *Haddle*, 525 U.S. at 126. Therefore, because plaintiff fails to state a claim which would survive a motion for dismissal, and the addition of Carter to the case would unduly prejudice the parties with extensive new discovery, the plaintiff's request for reconsideration is denied.

### 2. 42 U.S.C. § 1986

In relevant part, § 1986 provides a cause of action against "[e]very person who, having knowledge that any of the wrongs [described in § 1985] conspired to be done . . . are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed." 42 U.S.C. § 1986. A colorable claim under § 1985 is a precondition to asserting a claim under § 1986. *In re Rodriguez*, 2005 U.S. App. LEXIS 22400 (D.C. Cir. 2005) (citing *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983)). As stated above, plaintiff makes no allegations that Carter attempted to prevent him from attending or testifying at a federal court proceeding, nor that Carter retaliated against him for doing so. (Pl. Mot. 2-10.) The only allegations plaintiff makes against Carter revolve around alleged retaliation against Johnson (wrongful termination from DCOIG), for which plaintiff does not have standing to

seek redress.[3] (*Id.*) As the plaintiff is unable to state a claim against Carter which would survive a motion to dismiss, plaintiff's request to join Carter as a defendant must be denied as futile.

**C. Davis**

Plaintiff submits that Davis's decision to submit DCOIG's position statement to the EEOC without including his affidavit, and the subsequent impeachment of plaintiff with an allegedly false affidavit in *Johnson v. Maddox*, serve as the basis for a cause of action under 42 U.S.C. § 1985(2), and requests an opportunity for further discovery. (*Id.* at 20-31.) Plaintiff, however does not allege that Davis used "force, intimidation, or threat" to deter him from either submitting the affidavit to EEOC of his own volition or from testifying accurately in the *Johnson* matter. (*Id.* at 11-26.) Nor does plaintiff allege that Davis took part in any sort of retaliatory action against him for his affidavit or testimony. (*Id.*)

As plaintiff has failed to state a claim against Davis which would survive a motion to dismiss, amendment would be futile and reconsideration must be denied. Further, the discovery requested would be unduly prejudicial to defendants, and for that reason also, reconsideration must be denied. *Atchinson*, 73 F.3d at 426.

**D. Wyllie**

Plaintiff alleges Wyllie campaigned to take over plaintiff's position at DCOIG by spreading lies and rumors about the plaintiff and Johnson. (Pl. Mot. 37-38.) Plaintiff also asserts that Wyllie had knowledge of and disapproved of his participation in the class action suit against the FBI. (*Id.*) Plaintiff further submits that additional discovery, specifically depositions of Carter, Wyllie, and, former D.C. Inspector General, E. Barrett Prettyman, Jr., would shed more light on Carter's

---

[3] In *Johnson v. Maddox*, the court found that "there is absolutely no evidence whatsoever that Johnson's termination was in any way caused by his filing complaints against the FBI and Carter." 270 F. Supp. 2d 38, 43 (D.D.C. 2003).

involvement in a conspiracy against the plaintiff. (*Id.*)

In order to establish a prima facie case for a hostile work environment the plaintiff must establish that [1] he is a member of a protected class; [2] he was subjected to unwelcome harassment; [3] the harassment was based on his status within the protected class; [4] the harassment unreasonably interfered with his work performance and created a hostile work environment; and [5] the employer knew or should have known about the condition but failed to act. *See Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) (citing *Jones v. Billington*, 12 F. Supp. 2d 1, 11 (D.D.C. 1997), aff'd, 1998 U.S. App. LEXIS 15459, 1998 WL 389101 (D.C. Cir. June 30, 1998)); *cf. Williams v. Chertoff*, 2005 U.S. Dist. LEXIS 38847 (D.D.C. 2005). Though the plaintiff, being an African-American male, is a member of a protected class, there is no suggestion by plaintiff that he was harassed based on that status. Rather, the alleged harassment consisted of a co-worker positioning for plaintiff's job.

Further, a retaliation claim requires plaintiff to demonstrate that [1] he engaged in a statutorily protected activity; [2] the employer took an adverse employment action; and [3] there is a causal relationship between the two. *Romero-Ostolaza*, 370 F. Supp. 2d at 148 (citing *Brown*, 199 F.3d at 452); *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003). Plaintiff has made no allegation that Wyllie has taken adverse employment action against him. Indeed, as Wyllie was not in a superior position to plaintiff, he would have been incapable of taking an adverse employment action against plaintiff.

While gunning to take over the plaintiff's position is not an admirable quality, if true, it does not qualify as harassment, a hostile work environment, or a retaliatory act for the purposes of this lawsuit. Therefore, as plaintiff fails to state a claim that would survive a motion to dismiss, and the addition of Wyllie would cause undue prejudice by necessitating further discovery, reconsideration must be denied.

**D. 42 U.S.C. § 1985 Claim Against the District of Columbia**

The Court reconsidered, *sua sponte*, the plaintiff's prior request that the Court hear a claim of conspiracy under 42 U.S.C. § 1985 as applied to the District of Columbia. While there is precedent indicating that provision does not apply to the District of Columbia, *Boykin v. District of Columbia*, 689 F.2d 1092, 1099 (D.C. Cir. 1982), it has been substantially called into question. *See Stevens v. District of Columbia*, 1994 U.S. Dist. LEXIS 9513 (D.D.C. 1994) (citing *Boykin*, 689 F.2d at 1097-99, overruled, *Hobson v. Wilson*, 237 U.S. App. D.C. 219, 737 F.2d 1, 16 n.45 (D.C. Cir. 1984), *cert. denied*, 470 U.S. 1084 (1985); *contra Morgan v. District of Columbia*, 550 F. Supp. 465, 471 (D.D.C. 1982) (stating, "§ 1985(3) does not include the District of Columbia or its officials acting in an official capacity").

Therefore, as plaintiff has properly plead officials of the District of Columbia in their official capacity (which is tantamount to suing the District of Columbia), the Court revives the plaintiff's § 1985 and § 1986 claims as to those officials. Those claims may at this stage[4] be brought against the District of Columbia.

### IV. CONCLUSION

For the foregoing reasons, this Court concludes that the plaintiff has not met his burden for reconsideration. Accordingly, and for the reasons stated herein, plaintiff's motion for reconsideration, clarification, and relief will be hereby DENIED. Further, the Court hereby concludes that § 1985 and § 1986 claims may properly be brought against the District of Columbia. Accordingly, and for the reasons stated herein, the Order [58] dismissing the § 1985 and § 1986 claims as brought against properly plead officials of the District of Columbia will be VACATED in

---

[4] "At this stage" means solely for the purpose of considering the allegations. Whether a claim is properly stated against the named defendants or whether they are otherwise subject to dismissal remains to be decided in a separate opinion.

part and those claims are reinstated.

        A separate Order shall issue this date.

        Signed by Royce C. Lamberth, United States District Judge, May 4, 2006.