UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
DAVID M. BOWIE,                                 )
                                                )
                    Plaintiff,                  )
                                                )
        v.                                      )        Civil Action No. 03-948 (RCL)
                                                )
ALBERTO GONZALES,                               )
*et al.*                                        )
                                                )
                    Defendants.                 )
_____)


## MEMORANDUM OPINION

This case comes before the Court on plaintiff's Motion [72] for Summary Judgment, or in

the Alternative, Motion for Partial Summary Judgment, filed on behalf of David M. Bowie,

appearing *pro se*, as well as defendants' Motion [73] for Summary Judgment, filed on behalf of

Alvin Wright, Jr., Karen Branson, Anthony A. Williams, Charles C. Maddox, Austin A. Andersen,

and Jerome A. Campane.  Pursuant to Order [58] denying plaintiff's Motion [45] for Leave to File

Second Amended Complaint, six claims remain under which the plaintiff proceeds: [1] wrongful

termination against all defendants, pursuant to common law and 42 U.S.C. § 1983,[1] [2] First

Amendment claims against all defendants, [3] under the District of Columbia Whistleblowers

Protection Act ("WPA"), D.C. Code § 2-223.01, claims against the District of Columbia, [4]

retaliation in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-

---

[1]       Plaintiff asserted claims under 42 U.S.C. § 1981 for wrongful termination in his
complaint (Compl. 53, 61), however plaintiff now asserts wrongful termination under § 1983 (Pl.
Resp. to Mot. Summ. J. Ex. 34.).  Based on the policy favoring liberal construction of complaints,
and the fact that the plaintiff is proceeding *pro se*, the Court will consider wrongful termination
under § 1983.  Further, it appears defendants addressed wrongful termination pursuant to common
law.  (Def. Mot. Summ. J. 12-14.)  The Court will consider the common law claim as well.

1402.61, against all defendants, [5] aiding and abetting retaliation in violation of the DCHRA, D.C. Code § 2-1402.62, against all defendants, and [6] unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*

For the reasons set forth herein, plaintiff's motion will be denied and defendant's motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Plaintiff was employed from November 1997 to August 2002, as the Assistant Inspector General for Investigations ("AIGI") for the District of Columbia Office of Inspector General ("DCOIG"). (Compl. 7.)  Terrence Wyllie was hired in February of 1998.  (Pl.'s Mot. 35.)  During his employment, on June 21, 1999, plaintiff, Inspector General ("IG") Charles C. Maddox, and Deputy Inspector General Austin A. Andersen, attended a meeting at the Federal Bureau of Investigations ("FBI") Washington Field Office ("WFO") Headquarters.  WFO's Assistant Director in Charge, Jimmy C. Carter, also attended.  At the end of the meeting, Carter took Maddox aside for a private conversation, where he "indicated that the FBI would not make its resources available to Maddox's office in any police corruption case because, in Carter's view, [Emmanuel] Johnson [a member of the IG's office] had a conflict of interest that might compromise his work."[2]  *Johnson v. Maddox*, 270 F. Supp. 2d 38, 40 (D.D.C. 2003).

In February 2000, plaintiff participated in a meeting with Maddox, Andersen, and plaintiff's deputy at the time Alfred Miller, regarding the unsatisfactory performance of Emmanuel Johnson. (Compl. 13.)  Remedial measures were considered, but in the end, the decision was made to dismiss

---

[2]     Plaintiff, Carter, and Johnson had all previously worked in the FBI/WFO.  Plaintiff and Johnson were involved in a class action lawsuit against the FBI, *Emmanuel Johnson, Jr. v. Reno*, Civ. No. 93-0206 (TFH).

Johnson. (Compl. 16-17.) Plaintiff disagreed with this decision, but informed Johnson of his termination. (*Id.*)

On March 28, 2000, Johnson filed a discrimination complaint against Maddox and Carter, alleging wrongful termination. (Compl. 24.) Gail Davis, Deputy Attorney General for the Office of the Attorney General for the District of Columbia, was assigned, in May of 2000, to represent and draft a position statement for DCOIG in response to the discrimination complaint filed by Johnson. (Pl.'s Mot. Summ. J. Ex. 20.) Davis, unable to meet with plaintiff, drafted an affidavit regarding the February meeting on Johnson's performance based on facts learned from Maddox and Andersen. (*Id.*)

Plaintiff, dissatisfied with the accuracy of the draft provided by Davis, prepared his own affidavit, which he submitted to Karen Branson, DCOIG General Counsel. (Compl. 27.) Davis decided to submit the position statement without plaintiff's affidavit, as "it included too much information that was not relevant to the issue at hand," and which the plaintiff was unwilling to eliminate. (Pl.'s Mot. Summ. J. Ex. 20.)

In June 2002, in preparation for a mandatory peer review required by DCOIG's enabling statute, several DCOIG divisions began internal preparations. (Defs.' Mot. Summ. J. 9.) Plaintiff's division, the Investigations Division ("ID") did not. (*Id.*) In response, and based on the scope of previously identified problems in that division, Maddox directed the Inspections and Evaluations Division ("I&E") to conduct an internal re-inspection (a repeat of an inspection that took place in 1999). (*Id.*) The re-inspection occurred June 1 to July 12, 2002. (*Id.*) This inspection had several irregular characteristics (as compared to other I&E inspections), in that it was: unexpected, rushed, not completed in accordance with normal procedures, and did not include ID leadership. (Pl. Mot. Summ. J. Ex. 31 at 2.) Further, neither the inspectors nor the ID leadership were given an

opportunity to see the report until IG Maddox's briefing.  (*Id.*)

On July 30, 2002, Andersen and Jerome Campane, Deputy Inspector General for Investigations, informed plaintiff that he was being terminated from DCOIG, with his last day of work to be August 2, 2002.  (Compl. 48-49.)  Plaintiff's official separation date was August 16, 2002.  Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") claim on February 25, 2003.  (Compl. 49.)

## II. DISCUSSION

### A.  Standard of Review

Summary judgment is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c).  The presence of disputed facts alone is insufficient to defeat summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  An issue is genuine if there is evidence on which a jury could base a verdict for the nonmoving party. *Id.* at 248.  A fact is material if the dispute over it could determine the outcome of the suit under governing law. *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

The party seeking summary judgment bears the responsibility of demonstrating that no genuine issues of material fact are in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is entitled to summary judgment as a matter of law if the party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  In making this determination, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369  U.S. 654, 655 (1962)).

## B.  Count I: Wrongful Termination

### 1.  Common Law Claim Against the District of Columbia[3]

To the extent that he seeks unliquidated damages,[4] plaintiff's claim against the District of Columbia based on wrongful termination is barred by the mandatory notice provision of D.C. Code § 12-309.  *See Beeton v. District of Columbia*, 779 A.2d 918, 925-26 (D.C. 2001) (application of § 12-309 barring unliquidated damages based on a wrongful termination claim); *see also McRae v. Olive*, 368 F. Supp. 2d 91, 95 (D.D.C. 2005) (citing *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995)); *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981)).

The Code provides in relevant part:

> An action may not be maintained against the District of Columbia for *unliquidated* damages to person or property unless, within six months after the injury or damage was sustained, the claimant . . . has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12-309 (2006) (emphasis added).  The statute's purpose is "to protect the District of Columbia against unreasonable claims and to assist it in the defense of the public interest where claims are made within the 3-year statute of limitations but so long after the event that it is impossible for the District of Columbia to obtain evidence" for the resulting litigation.  *George v.*

---

[3]        "District of Columbia" includes all employees of the district being sued in their official capacities.  *Kentucky v. Graham*, 473 U.S. 159 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 658 n.55 (1978)).

[4]        The term "unliquidated damages" is defined as "damages that cannot be determined by a fixed formula and must be established by a judge or jury."  *See* BLACK'S LAW DICTIONARY 419 (8th ed. 2004); *cf. id.* at 418 ("liquidated damages").

*Dade*, 769 A.2d 760, 764 (D.C. 2001) (quoting the legislative history of § 12-309 as set forth in

H.R. Rep. No. 2010, 72d Cong., 2d Sess. (1933)).

The question whether plaintiff's notice to the District complied with § 12-309 is one of law.

*Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995) (citing *Washington v. District

of Columbia*, 429 A.2d 1362, 1366 n.15 (D.C. 1981) (en banc)).  The requirements of the statute

are to be strictly construed.  *See Winder v. Erste*, 2005 U.S. Dist. LEXIS 5190, *29-30 (D.D.C.

2005) (submissions to DCOIG and the Office of Employee Appeals were found inadequate);

*District of Columbia v. Ross*, 697 A.2d 14, 19 n. 6 (D.C. 1997) (rejecting claim that a

questionnaire prepared by a D.C. employee documenting a lead poisoning incident satisfied §

12-309); *Campbell v. District of Columbia*, 568 A.2d 1076, 1078 (D.C. 1977) ("The statutory

exception to formal notice ... is limited to police reports.").  As a matter of law in the present case the

statute's requirements have not been met, as at no point does plaintiff assert written notice was

given.  (Pl.'s Resp. Mot. Summ. J. Ex. 34.)  Therefore, summary judgment must be granted in favor

of the District of Columbia on plaintiff's common law claim of wrongful termination.

**2.  42 U.S.C. § 1983 Claim Against the District of Columbia**

Plaintiff correctly argues (Pl.'s Resp. Mot. Summ. J. Ex. 34.), that the defendants' notice

argument based on § 12-309 is without merit as it pertains to § 1983 claims.  *See Gabriel v. Corr.

Corp. of Am.*, 211 F. Supp. 2d 132, 139 (D.D.C. 2002) (citing *Felder v. Casey*, 487 U.S. 131,

140-41 (1988) (adopting the near-unanimous conclusion of the federal courts that notice-of-claim

statutes are inapplicable to federal-court § 1983 litigation)); *Johnson-El v. District of Columbia*,

579 A.2d 163, 170 (D.C. 1990) (holding that claims brought under 42 U.S.C. § 1983 are not

subject to the notice provisions of D.C. Code § 12-309)).  In *Felder*, the Supreme Court concluded:

> In enacting § 1983, Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law. Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court.

487 U.S. at 153.  Thus, as failure to meet the requirements of D.C. Code § 12-309 is irrelevant to plaintiff's claim under § 1983, summary judgment on that basis must be denied.

Ultimately, however, the defense is entitled to summary judgment as plaintiff fails to state a claim for which relief can be granted under § 1983.  Section 1983 creates no rights of its own, but is merely an enforcement mechanism for individual rights guaranteed under either the Constitution or federal statutes.  *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (U.S. 2005).  In his wrongful termination claim, plaintiff asserts many "public policies" that the defendants allegedly violated, however nearly all of them are based in District of Columbia law, outside the scope of § 1983.  (Compl. 55-61.)     The only federal rights violation alleged by plaintiff in conjunction with his wrongful termination claim (First Amendment and Title VII[5] allegations will be dealt with separately *infra*, as they are contained in distinct counts) is of the Civil

---

[5]     While there may be concurrent causes of action under each, § 1983 may not be invoked to redress rights created under Title VII.  *Cf. Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (U.S. 1979); 4-106 Labor and Employment Law § 106.07.

7

Rights Act of 1991, 42 U.S.C. §

1981.  It provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

This equal rights provision was "meant, by its broad terms, to proscribe discrimination in [among other things] the making or enforcement of contracts against, or in favor of, any race." *Gratz v. Bollinger*, 539 U.S. 244, 276 (2003) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295-96 (1976)).  In the present case the plaintiff makes no allegation that he was discriminated against and suffered wrongful termination based on his race.  Accordingly, plaintiff cannot sustain a claim of wrongful termination based on an equal protection violation and summary judgment must be granted.

### 3.  Claims Against Individual Defendants

In the District of Columbia, wrongful termination in violation of a clear public policy is an exception to the traditional at-will employment doctrine.[6]  *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 645 (D.C. 2005).  Whether a discharge violates public policy[7] is determined

---

[6]     "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."  *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991).

[7]     Defendants argue that based on *Adams*, 597 A.2d at 30, the only narrow exception to at-will employment doctrine is where the sole reason for termination was the employee's refusal to violate the law.  (Defs.' Mot. Summ. J. at 15.)  As the *pro se* plaintiff correctly points out, defense counsel should note that the *Adams* exception has been specifically interpreted on a broader level to allow for additional public policy exceptions and cases interpreting it otherwise have been expressly

on a case-by-case basis, guided by the concept that a wrongful termination cause of action must be "firmly anchored in either the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." *Warren v. Coastal Int'l Secs., Inc.*, 96 Fed. Appx. 722, 722-23 (D.C. Cir. 2004) (citing *Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803 n.7 (D.C. 1999)) (plaintiff contended she was discharged in violation of the alleged public policies undergirding assorted District and federal workplace safety and whistleblower laws) (internal quotations and citations omitted). Further, "there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." *Warren*, 96 Fed. Appx. At 722-23.

In the present case, plaintiff alleges that defendants violated public policy by attempting to compel him to support Johnson's termination, though he did not believe it was justified, both in conference before Johnson was fired and via affidavit in Johnson's EEOC investigation. (Pl.'s Resp. Mot. Summ. J. Ex. 35.) Additionally, plaintiff claims that he was "taken to the wood shed" by Maddox and Andersen for his failure to "step up to the plate" and support Johnson's discharge. (*Id.*) Plaintiff does not, however, allege that either Maddox or Andersen conditioned his employment on his support of terminating Johnson.

It has been determined by Magistrate Judge John M. Facciola of this Court, that the disagreement surrounding Johnson's termination was "at most a legitimate dispute among reasonable people as to whether Johnson should stay or go" and that Johnson's termination was lawful. *Johnson*, 270 F. Supp. 2d at 44. Therefore, while attempts to strong-arm plaintiff into supporting Johnson's dismissal are not admirable actions, they do not rise to the level necessary for a

_____

overruled. *Carl v. Children's Hosp.*, 702 A.2d 159, 160 (D.C. 1997).

public policy violation supporting an exception to at-will employment doctrine in a wrongful

termination claim.  Accordingly, the individual defendants must be granted summary judgment.

## C.  Count II: First Amendment Violations

### 1.  First Amendment Claim Against the District of Columbia

Section 1983 supplies a cause of action for constitutional violations, providing in pertinent

part that:

> every person who, under color of any statute, ordinance, regulation,
> custom, or usage of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizens of the United States, or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

42 U.S.C. 1983.  For the purposes of § 1983, the District of Columbia is treated as a municipality.

*Bridges v. Kelly*, 977 F. Supp. 503, 506 (D.D.C. 1997) (Lamberth, J.) (citing *Dorman v. District*

*of Columbia*, 888 F.2d 159, 162 (D.C. Cir. 1989)).

Municipalities are liable under § 1983 "only if their agents acted pursuant to municipal

policy or custom."  *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 425

(D.C. Cir. 2005) (quoting *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004)).

"The action of an official with final decision-making authority in a particular area can amount to a

municipal "'policy.'"  *Gittens*, 364 U.S. App. D.C. at 386 (citing *McMillian v. Monroe County*,

520 U.S. 781 (1997); *Bd. of Comm'rs v. Brown*, 520 U.S. 397 (1997); *Pembaur v. Cincinnati*,

475 U.S. 469 (1986) (plurality opinion).  Identification of officials with policymaking authority is a

question of state law.  *St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).  "Authority to make

municipal policy may be granted directly by a legislative enactment or may be delegated by an

10

official who possesses such authority." *Id.* (citing *Pembaur*, 475 U. S. at 483).

Plaintiff asserts that Gail Davis,[8] Deputy Attorney General for the Office of the Attorney

General for the District of Columbia, acted in concert with other defendants to obstruct his testimony

regarding Johnson's EEOC investigation.  (Pl.'s Resp. Mot. Summ. J. Ex. 37.)  However, while

Davis did not include plaintiff's affidavit in DCOIG's position statement for the investigation, there

was nothing to prevent plaintiff from submitting the affidavit to EEOC of his own accord.  Further,

neither Davis nor the named defendants were required, in their official capacities, to submit

plaintiff's affidavit which they felt "included too much information that was not relevant to the issue

at hand."  (Pl.'s Mot. Summ. J. Ex. 20.)

None of the named defendants had "final decision-making authority" over whether EEOC

received plaintiff's affidavit – only over whether it was included in DCOIG's position statement.

This ground is insufficient to support a First Amendment violation claim.  Accordingly, as plaintiff

is unable to show a municipal policy which resulted in the violation of his First Amendment rights or

indeed that any violation occurred, defendants are entitled to summary judgment.

## 2.  First Amendment Claim Against Individual Defendants

For a public employee to make out a prima facie case of retaliation violating the First

Amendment, he must meet a four-factor test.  *O'Donnell v. Barry*, 148 F.3d 1126, 1133 (D.C. Cir.

1998) (citing *Hall v. Ford*, 856 F.2d 255, 258 (D.C. Cir. 1988)).  The plaintiff must establish [1]

that the public employee was speaking on a matter of public concern; [2] that the government's

interest in efficient performance of public services is outweighed by the plaintiff's interest "as a

---

[8]     This Court denied plaintiff's attempt to join Davis by amending his complaint a
second time, on the basis that plaintiff failed to state a claim against Davis which would survive a
motion to dismiss.

citizen, in commenting upon matters of public concern," combined with the interest of plaintiff's

potential audience in hearing the plaintiff's comments; [3] the plaintiff's speech was the motivating

factor for the employer's retaliatory action; and last, [4] the adverse employment action was not

motivated by legitimate, non-pretextual grounds.  *O'Donnell*, 148 F.3d at 1133 (citing *Tao v.*

*Freeh*, 27 F.3d 635, 638-39 (D.C. Cir. 1994) (citations omitted));  *Pickering v. Board of Educ.*,

391 U.S. 563 (1968);  *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 468

(1995);  *Mt. Healthy City Sch Bd of Education v. Doyle*, 429 U.S. 274 (1977).  "The first two

factors under the *Pickering* test are questions of law for the court to resolve, while the latter are

questions of fact ordinarily for the jury."  *Tao*, 27 F.3d at 639.

Plaintiff's claim fails on the first prong of the test: the requirement that the speech involve a

matter of public concern.  Plaintiff asserts that the defendants retaliated against him, and ultimately

fired him, for his affidavit regarding Johnson's EEOC investigation.  (Pl.'s Resp. Mot. Summ. J. Ex.

38.)  It is well-settled that:

> [w]hen employee expression cannot be fairly considered as relating to
> any matter of political, social, or other concern to the community,
> government officials should enjoy wide latitude in managing their
> offices, without intrusive oversight by the judiciary in the name of the
> First Amendment. Perhaps the government employer's dismissal of the
> worker may not be fair, but ordinary dismissals from government
> service which violate no fixed tenure or applicable statute or regulation
> are not subject to judicial review even if the reasons for the dismissal are
> alleged to be mistaken or unreasonable. . . .We hold only that when a
> public employee speaks not as a citizen upon matters of public concern,
> but instead as an employee upon matters only of personal interest,
> absent the most unusual circumstances, a federal court is not the
> appropriate forum in which to review the wisdom of a personnel
> decision taken by a public agency allegedly in reaction to the
> employee's behavior.

*Murray v. Gardner*, 741 F.2d 434, 438 (D.C. Cir. 1984) (quoting *Connick v. Myers*, 461 U.S. 138

(1983)).  Speech regarding "individual personnel disputes and grievances" is not relevant to the

public's evaluation of governmental agencies' performance. *Murray*, 741 F.2d at 438 (citing

*Connick*, 461 U.S. at 138). Plaintiff's affidavit specifically targeted an individual personnel

dispute. In the affidavit, plaintiff questioned Johnson's termination, but did not indicate that it was

racially motivated or that it was retaliatory. (Pl.'s Mot. Summ. J. Ex. 21.) The affidavit lacked any

issue of public concern, and instead revolved entirely around Johnson's work performance and the

possibility of remedial measures. (*Id.*) In fact, plaintiff even indicated that, "it was [his] sense that

Mr. Johnson clearly did not yet understand the mechanics of how things are done in this Office."

(*Id.*)

     Where the plaintiff's speech was not of public concern, it is not necessary to examine the

basis for the employer's adverse action absent the most unusual circumstances. *O'Donnell*, 148

F.3d at 1133 (citing *Tao*, 27 F.3d at 638-39). There is a lack of unusual circumstances in the

present case to merit moving forward with the First Amendment violation analysis in the absence of

speech on a matter of public concern. Accordingly, defendants must be granted summary judgment

on this issue.[9]

### D.  Count III: District of Columbia Whistleblower's Protection Act

     Plaintiff's failure to comply with the D.C. Code § 12-309 pre-suit notice requirements must

result in summary judgment in favor of the District of Columbia for the claims under the WPA.

*Winder v. Erste*, 2005 U.S. Dist. LEXIS 5190 (D.D.C. 2005). This includes any claim for

liquidated damages, as WPA specifies that compliance with § 12-309 is required before bringing a

civil action for any of the remedies authorized thereunder. D.C. Code § 1-615.54(a). *Id.*

---

[9]    As summary judgment must be granted for all First Amendment claims, the Court will not reach the merits of defendants' argument regarding qualified immunity on the claims for individual defendants. (Defs.' Mot. Summ. J. 25.) The issue is moot.

Accordingly, summary judgment must be granted in favor of the defendants regarding plaintiff's WPA claims.

## E. Counts IV & V: DCHRA Violations

### 1. Jurisdiction Over DCHRA Claims

Defendants assert that this Court lacks jurisdiction over the DCHRA claims based on the premise that plaintiff, being a government employee, must exclusively seek redress through the District of Columbia's Office of Human Rights ("OHR").  (Defs.' Mot. Summ. J. at 17.)  "The District of Columbia is a deferral jurisdiction for purposes of processing discrimination complaints." *Banks v. District of Columbia*, 377 F. Supp. 2d 85, 90 (D.D.C. 2005) (Lamberth, J.) (citing *Palmer v. Barry*, 282 U.S. App. D.C. 290, 894 F.2d 449, 451 n. 2 (D.C. Cir. 1990)). OHR is the local agency that manages employment discrimination claims.  *Id.* (citing 29 C.F.R. § 1601.74 (1989)).

A complainant in a deferral jurisdiction "need only file his charge within 240 days of the alleged discriminatory employment practice in order to insure that his federal rights will be preserved."  *Mohasco Corp. v. Silver*, 447 U.S. 807, 815 n. 16 (1980) (interpreting § 2000e-5 (e)(1)).  The complainant must file by day 240 to allow the 60 day deferral period of 42 U.S.C. § 2000e-5 (c) to pass.  *See id.*  When a complainant files with the EEOC before the end of the deferral period, EEOC will wait until the termination of local proceedings or the end of the deferral period before asserting concurrent jurisdiction.  *See Love v. Pullman Co.*, 404 U.S. 522, 526 (1972). However, OHR has chosen to waive its right to exclusive jurisdiction over Title VII cases during that 60-day deferral period.  *Banks*, 377 F. Supp. 2d at 90 (citing *Fowler v. District of Columbia*, 122 F. Supp. 2d 37, 42 (D.D.C. 2000)).

A District of Columbia employee pursuing a cause of action under DCHRA , D.C. Code §

14

1-2543, must exhaust the available administrative remedies. *Kennedy v. District of Columbia*, 654 A.2d 847, 863 (D.C. 1995). The court in *Fowler* addressed this issue in detail, and concluded that the District of Columbia's OHR-EEOC "worksharing agreement relieved the plaintiff of the burden of exhausting his remedies with the state agency." 122 F. Supp. 2d at 42. Plaintiff was "entitled to bring a Title VII action in federal court and was not required to first file his complaint with the District of Columbia agency." *Id*. The court further determined that "it would be contrary to the policy of cooperation embodied in Title VII (and, the court notes, in the Worksharing Agreement) for the court to accept the defendant's interpretation of the DCHRA as requiring the plaintiff to pursue separate administrative remedies for state and federal discrimination claims." *Id*. at 43.

Accordingly, this Court properly maintains jurisdiction over plaintiff's DCHRA claims, and summary judgment must be denied.

### 2. Analysis of DCHRA Claims

The standard for a prima facie case of retaliation under the DCHRA mirrors the standard under Title VII. *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 85 (D.D.C. 2003) (Lamberth, J.) (citing *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994)); *Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 11 (D.D.C. 2001) (Lamberth, J.) (DCHRA claims are "analyzed in the same manner as claims arising under Title VII . . . [u]nder the framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973)") (citing *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C. Cir. 1997)). Therefore, analysis regarding the merits of plaintiff's DCHRA claims will be conducted simultaneously with plaintiff's Title VII claims (see Section F, *infra*).

### F. Count VI: Unlawful Retaliation in Violation of Title VII

Title VII retaliation claims, like discrimination claims, are analyzed under the *McDonnell Douglas* framework, however the prima facie requirements for retaliation are "slightly different": plaintiff must demonstrate that [1] he engaged in a statutorily protected activity; [2] the employer took an adverse employment action; and [3] there is a causal relationship between the two. *Clipper v. Billington*, 414 F. Supp. 2d 16, 25 (D.D.C. 2006) (Lamberth, J.) (citing *Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 145 (D.D.C. 2005) (Lamberth, J.); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003)).  It is undisputed that plaintiff engaged in statutorily protected activities.  (Defs.' Mot. Summ. J. at 27-33.)  Defendants assert, however, that plaintiff fails to establish a prima facie case for retaliation on the third prong, causation, and further that defendants had "legitimate, non-retaliatory reasons" for his dismissal.  (*Id.*)

**1.  Causation**

"At the prima facie stage of a retaliation claim, a plaintiff's burden 'is not great; [he] merely needs to establish facts adequate to permit an inference of retaliatory motive.'"  *Clipper*, 414 F. Supp. 2d at 25 (quoting *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006)) (citation omitted).  Typically, a plaintiff satisfies this burden regarding causation, by demonstrating both that the employer was aware of plaintiff's protected activity and a close temporal relationship between the activity and the adverse employment action plaintiff suffered.  *Holcomb*, 433 F.3d at 903 (citing *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999)).

Defendants urge that because there was a sixteen month lapse between plaintiff being asked to submit an affidavit in response to Johnson's EEOC investigation and his termination, the element

of a causal relationship between the protected activity and the adverse employment action is

defeated.  (Defs.' Mot. Summ. J. 31.)  Plaintiff, however, responds with a "Relevant Temporal

Activity Matrix" that indicates a pattern of behavior beginning in May 2000, and escalating until

plaintiff's dismissal in August 2002.  (Pl.'s Resp. Mot. Summ. J. Ex. 38-A.)  During this time

frame, plaintiff demonstrates steadily declining performance appraisals, evidence of increasing

supervision over himself and his division, changes in operating procedures which appear to have

adversely affected plaintiff, and an increasing sense of animosity directed towards plaintiff. (*Id.*)

   Plaintiff alleges that this gradual behavior was contemplated by defendants to achieve the

end result of terminating plaintiff after establishing a sufficient basis to avoid the appearance of

retaliation.  As it is possible that a jury could infer defendants had a retaliatory motive from the

defendants' behavior throughout the time period between the requested EEOC affidavit and

plaintiff's termination, summary judgment may not be granted for failure to demonstrate causation.

### 2.  Defendants' "Legitimate, Non-Retaliatory Reasons" for Plaintiff's Dismissal

   Under the *McDonnell Douglas* framework, once a plaintiff has demonstrated a prima facie

case of retaliation, the burden shifts to defendants to provide legitimate, non-discriminatory reasons

supporting the adverse employment action taken against plaintiff.  *Holcomb*, 433 F.3d 889, 896

(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (U.S. 2000); *Lathram v.

Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).  "If the defendant satisfies that burden, 'the

McDonnell Douglas framework--with its presumptions and burdens--disappears,  and the sole

remaining issue [is] discrimination vel non.'"  *Lathram*, 336 F.3d at 1088 (quoting *Reeves*, 530

U.S. at 142-43) (citations and internal quotation marks omitted).  "At this point, to survive

summary judgment the plaintiff must show that a reasonable jury could conclude from all of the

evidence that the adverse employment decision was made for a discriminatory reason."  *Lathram*,

336 F.3d at 1088 (citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc)).

In the present case, defendants assert that plaintiff was properly terminated for failing to perform his duties in a "skillful, timely, and efficient manner" and for failing to correct deficiencies identified by a 1999 inspection before his division was re-inspected in 2002. (Defs.' Mot. Summ. J. 31-32.) Plaintiff dedicated his entire Motion for Summary Judgment to rebutting these assertions. The most powerful pieces of evidence in plaintiff's arsenal, that could lead a reasonable jury to conclude his termination was retaliatory, as opposed to stemming from defendants' proffered non-discriminatory reasons, include: his performance evaluations (which until May 2002 reflect declining but consistently high marks), monetary incentive awards and salary increases plaintiff received (the last of which occurred in August 2001 for "outstanding performance"), and an affidavit from Melvina L. Coakley, previous Director of Planning and Inspections for DCOIG and one of three inspectors who conducted the 2002 re-inspection of plaintiff's division. (Pl.'s Mot. Summ. J.)

In her affidavit, Coakley indicated that the inspection of plaintiff's division was "totally unexpected . . . not done in accordance with our normal procedures (with no inspection plan scope or objectives)." (Pl.'s Mot. Summ. J. Ex. 31.) Coakley further stated that it was odd for ID's leadership (plaintiff) to have not been involved with the inspection, as inspections were normally collaborative efforts. (*Id.*) Another aspect of the re-inspection which Coakley found different was that, even as a contributing inspector, she was not provided a copy of the draft report until walking in to present it to IG Maddox. (*Id.*) Finally, Coakley maintained that while this re-inspection was unique to ID, the problems which the re-inspection identified were not. (*Id.*) Coakley expressed that the morale problems in ID were systemic in DCOIG and that none of the inspection's findings were

18

sufficient to justify plaintiff's termination.  (*Id.*)

Additional evidence of the state in which ID functioned during the last eight months of plaintiff's tenure can be gleaned from a peer review conducted by the Office of Inspector General for the City of Philadelphia, which reviewed DCOIG for a period beginning January 1, 2002, and ending April 1, 2003.  (Pl.'s Mot. Summ. J. Ex. 33.)  This peer review concluded that ID had a qualified staff who conducted investigations "in a diligent and complete manner," among numerous other positive findings.  (*Id.*)

Based on this evidence, it is possible that a reasonable jury could conclude that the defendants terminated plaintiff for retaliatory reasons.  Plaintiff's retaliation claim raises genuine issues of material fact that on this record may not be resolved on summary judgment.

## IV. CONCLUSION

For the foregoing reasons, this Court concludes that the plaintiff has not met his burden for summary judgment in his favor.  Accordingly, and for the reasons stated herein, plaintiff's motion for summary judgment will be hereby DENIED.  Further, the Court hereby concludes that defendants have partially met their burden for summary judgment.  Accordingly, and for the reasons stated herein, defendants' motion for summary judgment will be hereby GRANTED in part and DENIED in part.  It will be GRANTED as to plaintiff's wrongful termination claim, First Amendment claim, and WPA claim, and DENIED as to plaintiff's DCHRA claims, and Title VII claim.  Plaintiff's claims of conspiracy under 42 U.S.C. §§ 1985-1986 remain pending pursuant to a separate opinion issued this date.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, May 4, 2006.