**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
**ABDULWAHAB NATTAH,**                    )
                                          )
        **Plaintiff,**                    )
                                          )
        **v.**                            )        **Civil Action No. 06-700 (RCL)**
                                          )
**GEORGE W. BUSH,**                       )
**President of the United States,** *et. al.*, )
                                          )
        **Defendants.**                   )
_____)

**MEMORANDUM OPINION**

        Now before the Court comes three motions by plaintiff Abdulwahab Nattah:  motion [47]

for leave to file first amended complaint, motion [48] for leave to join additional defendants, and

motion [48] to vacate this Court's Order [32] granting dismissal to federal defendants.[1]  Also

before the Court is Defendant L-3 Communications Titan Group's ("Titan")[2] motion [38] to

dismiss.  Upon full consideration of the motions, opposition briefs, replies, the entire record

herein, and applicable law, the Court finds that the motion for leave to file amended complaint

will be GRANTED in part and DENIED in part, the motion to join additional defendants will be

_____

        [1] Plaintiff filed these three motions with the Court on November 28, 2007 as one
continuous document without page numbers docketed at entry number [47].  When referring to
these motions and their accompanying memoranda, the Court will reference "Docket Entry [47]"
and refer to page numbers given by the ECF system.

        [2] Subsequent to the events alleged in this case, L-3 Communications acquired the Titan
Corporation.  The successor entity is known as L-3 Titan Group.

DENIED, the motion to vacate will be DENIED, and Titan's motion to dismiss will be GRANTED.

I.   **BACKGROUND**

In January 2003, plaintiff Nattah, a dual citizen of Libya and the United States, began working as an employee of Titan as an Arabic linguist.  (Am. Compl. ¶¶ 13, 97.)  Although plaintiff makes reference to an employment contract signed January 17, 2003 (*See id.* ¶ 97), his employment offer letter, which Nattah signed on January 17, 2003, indicates that he would work in the capacity of an "at-will employee."  (*See* Ltr. from Williams to Nattah (Jan. 17, 2003), Ex. 1 to Mot. to Dismiss.)  According to Nattah, Titan contracted not to send Nattah to work in a war zone, promised that he would receive luxury accommodations in Kuwait, and agreed that he would only be terminated for one of three reasons.  (Am. Compl. ¶¶  22, 93–94.)  Nattah states that he, relying upon these representations by Titan and those by President Bush regarding Iraq— including the representation that the war in Iraq would be swift and would not entail battling an insurgency—decided to accept Titan's employment offer.  (*See id.* ¶¶ 75–90, 96, 139.)

At some time in early 2003, Nattah began working for Titan in Kuwait.  According to Nattah, as the United States was preparing to invade Iraq, Titan "sold plaintiff as a slave to the military."  (*Id.* ¶ 101.)  At that time, "the U.S. military made plaintiff one of the first prisoner[s] of war."  (*Id.* ¶ 102.)  The military then allegedly forced Nattah to work in Iraq against his will and he was deployed there as a military interpreter on March 20, 2003.  (*Id.* ¶ 103.)  Plaintiff contends that these events occurred because of the military's secret agreement as to the "slave

sale" with Titan "to trick plaintiff into staying in Kuwait" until war commenced in Iraq "at which time it would be impossible for plaintiff to leave the war zone." (*See* Docket Entry [47] at 6.) Nattah states that he "objected to his confinement, but that neither the military nor Titan would agree to release him from bondage." (Am. Compl. ¶ 103.)

At some point during Nattah's service in Iraq, he suffered a loss of all hearing in his left ear and partial hearing in his right ear, and required medical attention. (*Id.* ¶¶ 112–13, 118.) According to Nattah, he was sent to the American Army Hospital in Landstuhl, Germany and examined on May 16, 2003. (*Id.* ¶ 113.) Plaintiff next asserts that in June 2003, Rob Hansen, Deputy Director for Operations, indicated in a memo that Nattah needed to return to the United States, as he was on leave without pay as of May 12, 2003. (*See id.* ¶ 114.) Nattah felt that he needed to stay in Germany because "turbulence associated with a flight back to the United States would result in his death." (*Id.* ¶ 115.) At this point, Mr. Hansen apparently communicated to Nattah that his employment was terminated. (*Id.*) Then, Nattah states that on June 21, 2003, two "thugs" entered his hospital room, assaulted him, and told him to gather his belongings so that he could be taken to a doctor. (*See id.* ¶¶ 116, 271.) Nattah asserts that the "hoodlums" attempted to abduct him to send him back to the United States. (*Id.*) Plaintiff then underwent surgeries on June 23 and July 8, 2003 that failed to improve his hearing problems. (*See id.* ¶¶ 117–18.) Ultimately Nattah contends that in August 2003, he received a letter confirming his termination from employment and stating no reason for the termination. (*Id.* ¶ 122.) In addition to plaintiff's slavery and wrongful termination claims, he further alleges violations of several other United States laws, the Geneva Convention, the United Nations Charter, and provisions of Iraqi and Kuwaiti law. Further, Nattah seeks to hold Titan accountable for the manner in which it

3

administered security clearance applications on behalf of its employees.  (*Id.* ¶¶ 335–53.)

On October 30, 2006, federal defendants filed a motion [22] to dismiss.  Plaintiff, having received an extension of time [26] to file an opposition to the motion, failed to file such a brief.  On January 30, 2007, the Court granted federal defendants' motion and dismissed this case as it pertained to the federal defendants.[3]  Plaintiff asks this Court to clarify whether its Order [32] dismissing the case as to the federal defendants applied to his *Bivens* claim against six unknown military personnel or only to the three named federal defendants.  (*See* Docket Entry [47] at 4.)  In March 2007, Titan filed a motion [38] to dismiss.  While that motion was pending, plaintiff, on November 28, 2007, filed his motion for leave to file amended complaint, motion to join additional parties, and motion to vacate the Court's Order [32] granting dismissal as to the federal defendants.  (*See* Docket Entry [47].)  On March 24, 2008, plaintiff filed a notice [63] voluntarily dismissing his claims against President George W. Bush and Vice-President Dick Cheney.

## II.   ANALYSIS

### A.   Clarification of this Court's January 30, 2007 Order

This Court's January 30, 2007 Order dismissed claims only against the following federal defendants:  President George W. Bush, Vice-President Dick Cheney, and former Secretary of Defense Donald Rumsfeld.  The remaining defendants are Titan and "six unknown United States Government employees."

---

[3] Plaintiff appealed the Order dismissing the case as to the federal defendants.  The Court of Appeals ordered the appeal dismissed for lack of prosecution.  (*See* Court of Appeals Mandate, Docket Entry [46].)

**B.**     **Motion for Leave to File Amended Complaint**

    **1.**     **Legal Standard**

Plaintiffs are permitted to amend a complaint once as a matter of right anytime "before being served with a responsive pleading."  FED. R. CIV. P. 15(a)(1).  This right to amend is generally *absolute* as long as no responsive pleading has been served.  *See James V. Hurson Assocs.*, *Inc. v. Glickman*, 229 F.3d 277, 282–83 (D.C. Cir. 2000).  A motion to dismiss is not ordinarily considered a "responsive pleading."  *See Bowden v. United States*, 176 F.3d 552, 555 (D.C. Cir. 1999) (citing *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).  Once such a pleading has been served, "leave of court or [ ] written consent of the adverse party" is required to amend a complaint.  *See Confederate Mem'l*, 995 F.2d at 299 (citing FED. R. CIV. P. 15(a)).

    **2.**     **Leave to Amend Shall be Granted in Part and Denied in Part**

The Court will evaluate the motion for leave to amend by dividing the named defendants in the proposed amended complaint into three groups: (1) defendants with claims pending against them at the time Nattah moved for leave to file; (2) defendants who were granted dismissal with prejudice; and, (3) new proposed defendants who were not included in the original complaint.

    **i.**     **Titan and Six Unknown Government Employees**

First, the Court finds that plaintiff's amendment as to Titan and six unknown government employees will be granted as of right under Rule 15(a) because no responsive pleading has been filed.  The proposed amended complaint will be deemed filed as the amended complaint as of November 28, 2007.

ii.     **Previously Dismissed Defendants**

a.     **Court Has Discretion**

The Court next examines Nattah's motion for leave to amend as to federal defendants

George W. Bush, Dick Cheney, and Robert Gates.  Upon plaintiff's notice [63] voluntarily

dismissing his cause of action against President Bush and Vice-President Cheney, Secretary

Gates is now the only previously dismissed defendant that plaintiff wishes to include as a named

defendant.  When the motion was filed, Nattah's claims against Secretary Gates had been

dismissed with prejudice.[4]  This Court agrees with the approach that "[w]hen a plaintiff's first

amended complaint asserts claims against defendants who have been dismissed from the suit,"

courts have "discretion in denying amendment as to those defendants."  *Johnson v. Dist. of

Columbia*, 244 F.R.D. 1, 4 (D.D.C. 2007) (Lamberth, J.); *see Bancoult v. McNamara*, 214 F.R.D.

5, 8–9 (D.D.C. 2003) (granting motion to amend complaint "as a matter of course" as to

defendants against whom claims remained pending, but denying the motion as futile as to

dismissed defendant); *see also Cassell v. Michaux*, 240 F.2d 406, 408 (D.C. Cir. 1956)) (holding

that the district court had discretion where plaintiff sought to amend a count that had been

dismissed with prejudice).  Thus, plaintiff lost the ability to amend as a matter of course as to

Secretary Gates when the Court entered its Order dismissing Nattah's claims against him, and

the Court has discretion in determining whether to permit amendment as to this federal

defendant.

---

[4] The Court dismissed this action against Donald Rumsfeld, in his official capacity.
Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Rumsfeld's "successor is automatically
substituted as a party."  Secretary of Defense Robert Gates simply steps into Mr. Rumsfeld's role
as defendant.  Thus, the Court's dismissal of the action as to Mr. Rumsfeld applies equally to
Secretary Gates.

### b.      Amendment Denied as Futile

When a court has discretion, it "should freely give leave when justice so requires." FED.

R. CIV. P. 15(a)(2).  However, it is within a court's discretion to deny leave to amend for

"sufficient reason, such as 'undue delay, bad faith, [ ] dilatory motive . . . repeated failure to cure

deficiencies by [previous] amendments . . . [or] futility of amendment.'"  *Firestone v. Firestone*,

76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see*

*Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (finding no abuse

of discretion when district court denied leave to amend because additional claim would have

been futile).  A court may deny a motion to amend as futile "if the proposed claim would not

survive a motion to dismiss."  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099

(D.C. Cir. 1996) (citing *Foman*, 371 U.S. at 181–82).

For the reasons set forth below, the Court finds that Nattah's proposed claims against

Secretary Gates are futile; the Court, in its discretion, will deny Nattah's motion for leave as to

Secretary Gates.  Despite Nattah's assertions to the contrary, the proposed amended complaint

does not assert a new factual basis for liability against Secretary Gates but rather relies on

plaintiff's same vague assertions that he was tricked into working for Titan in the Middle East by

defendant's false representations as to the nature of his work and as to whether the United States

would ultimately invade Iraq in 2003.   Nattah relies on these facts to support the many claims

alleged in his proposed amended complaint.  To the extent that plaintiff seeks damages against

Secretary Gates in his official capacity,[5] all of Nattah's claims would fail to survive a motion to

---

[5] The proposed amended complaint lists Secretary Gates as a defendant in his official capacity.  (*See* Am. Compl. at 1.)  However, the document is at times unclear as to whether Secretary Gates is sued in his individual or official capacity.  (*See* Am. Compl. ¶ 4 (stating that several claims are asserted against Secretary Gates in his individual capacity).)

dismiss because the Government has not waived sovereign immunity.  All suits against the United States are barred by sovereign immunity except in terms of explicit waiver of such immunity.  *See Lane v. Pena*, 518 U.S. 187, 192 (1996).  And, Nattah's claims against Secretary Gates in his official capacity are properly considered claims against the United States.[6]  Thus, sovereign immunity would bar Nattah's claims against Secretary Gates in his official capacity.

To the extent that plaintiff asserts a claim against Secretary Gates in his individual capacity, such a claim would also fail to survive a motion to dismiss.  The Court recognizes that under *Bivens*, a cause of action may exist for a violations of a person's constitutional rights.  *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). However, such a suit is subject to the defense qualified immunity for claims against government officials.  Government officials retain qualified immunity to the extent that, in the performance of discretionary functions, "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (citations omitted).  Here, Secretary Gates would be shielded from liability because the nexus between his actions and plaintiff's alleged harm has not been sufficiently plead.  Plaintiff essentially alleges a foreign-policy conspiracy that indirectly led to his injuries.  Such an assertion does not encroach upon an official's qualified immunity.  For these reasons, the Court will deny plaintiff's motion for leave to amend as to Secretary Gates.

### iii.    Newly Named Defendants

Finally, the Court turns to the motion to amend as to newly named defendants.  Plaintiff's

---

[6] Mere naming of individual defendants does not avoid the doctrine of sovereign immunity.  *See Saunders v. Reno*, No. 93-cv-1829, 1993 WL 771009, at *1 & n.5 (D.D.C. Dec. 20, 1993) (Lamberth, J.).

motion seeks to add the following individuals and entities to the original lawsuit:  Francis

Harvey, in his official capacity as United States Secretary of the Army; "Curveball"; Dr. Ahmed

Chalabi; the Iraqi National Congress Assembly Fund; the Iraqi National Congress Support

Foundation; the Iraqi National Congress Defense Foundation, LLC; and, the Iraqi National

Congress Action Foundation.  (*See* Docket Entry [47] at 21–22.)  Because plaintiff's amended

complaint does not adequately differentiate among the four Iraqi National Congress entities and

appears to accuse each of the same causes of action, this Opinion will refer to the four entities

collectively as "the INC."

### a.      Legal Standard

"It is well accepted that a plaintiff may add new defendants in amending her complaint

'as a matter of course.'" *Johnson v. Dist. of Columbia*, 244 F.R.D. 1, 6 (D.D.C. 2007)

(Lamberth, J.) (citing FED. R. CIV. P. 15(a)(1), (c); 6 CHARLES ALAN WRIGHT, ARTHUR R.

MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 1474 (1990)).  However,

"'[t]he purpose of the amendment of right provision is to avoid judicial involvement in the

pleading process [at a stage] when . . . it is unlikely that applications for leave to amend would

be denied by a judge' for such reasons as undue delay, undue prejudice, or futility."  *See*

*Johnson*, 244 F.R.D. at 6 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY

KANE, FEDERAL PRACTICE AND PROCEDURE, § 1474 (1990)) (citing *Foman v. Davis*, 371 U.S.

178, 182 (1962)).  In *Johnson*, this Court expressed the sentiment that it was somewhat illogical

that leave of court should be required to reinstate previously dismissed defendants and not

required to add new defendants when "naming wholly new defendants seems far more likely to

cause delay or prejudice."  *See Johnson*, 244 F.R.D. at 6.  Despite this Court's recognition of the

well-established principal that plaintiffs may add new defendants as a matter of course when

amending a complaint, in extraordinary cases the Court will deny such a motion. *See Burdine v. Wells*, No. 94-3103, 1994 WL 174174, at *2 n.1 (D. Kan. Apr. 28, 1994) (recognizing the rule that a plaintiff may generally amend a complaint once as a matter of course before the filing of a responsive pleading but nonetheless denying a plaintiff's attempt to add a new defendant because plaintiff's claim was without legal or factual foundation), *aff'd*, 45 F.3d 439 (10th Cir. 1994) (unpublished table decision).

### b.    Motion as to Iraqi Defendants

Plaintiff states that the "amended complaint joins individuals and organizations responsible for starting the Iraq war and charges them with violating the False Claims Act." (Docket Entry [47] at 23.)  Nattah apparently seeks joinder because since the time he filed the original complaint, investigations of pre-war intelligence concluded that the supposed existence of mobile labs capable of making chemical and biological weapons was a key factor in convincing the United Nations to authorize military action in Iraq.  (*See id.*)  Nattah, with the hindsight of knowing that this intelligence was inaccurate, seeks to hold parties legally responsible for the intelligence.  (*See id.* at 24.)  Thus, plaintiff seeks joinder of "Curveball," an Iraqi taxidriver because he, working as an agent of proposed defendants the INC and Ahmed Chalabi, fabricated the story about mobile labs.  (*See id.*)  Nattah wishes to join the INC and Mr. Chalabi because they concocted a story about Iraq attempting to purchase Yellow Cake from Niger.  (*See id.*)  Plaintiff alleges that the INC defrauded the Defense Intelligence Agency out of $20,000,000.  (*See id.* at 24–25.)  In sum, Nattah appears to seek joinder of these defendants because one of them must be responsible for the United States' decision to invade Iraq in 2003. (*See id.* at 23.)  Plaintiff succeeds in clearly communicating a dissatisfaction with the intelligence or mis-intelligence that may have led to the United States invasion of Iraq.  However,

successfully expressing such commentary does not translate into successfully stating a cognizable claim.  Nattah's legal claims against INC, Curveball, and Mr. Chalabi do not even approach stating a claim upon which relief can be granted and from a legal standpoint are vague, unclear, and conclusory.  The claims are the very essence of futile and the ends of justice and efficiency would not be served by forcing the proposed new defendants to expend resources in a lawsuit that has no chance of stating a plausible claim.  For this reason, the Court will deny the motion for leave to file an amended complaint as to these defendants.

### c.        Motion as to Army Secretary Francis Harvey

Plaintiff's amended complaint names Secretary of the Army Francis Harvey as a defendant in his official capacity.  The amended complaint makes no specific allegations against Secretary Harvey that are distinguishable from those asserted against the other federal defendants.  Thus, claims against Secretary Harvey would not survive a motion to dismiss for the same reasons that the claims Secretary Gates, in his official capacity, fail—the Government is immune from suit and has not explicitly waived immunity.  As with Nattah's claims against the Iraqi defendants, his claims against Secretary Harvey represent the extraordinary instance where it is proper to deny a motion to add parties when they would typically be added as a matter of right.  The alternative to denying the motion to add Secretary Harvey as a defendant—essentially granting joinder of Secretary Harvey, waiting for Secretary Harvey to file a motion to dismiss, and then granting dismissal on the same grounds that dismissal was granted for the other federal

defendants—would be an unnecessary waste of resources for all parties involved.  The motion to

for leave to amend as to Secretary Harvey will be denied.[7]

### C.    <u>Motion to Vacate Order Dismissing Federal Defendants</u>

The Court will deny plaintiff's motion to vacate this Court's order [32] dismissing the

suit against Secretary Gates.  Federal Rule of Civil Procedure 54(b) governs reconsideration of

orders that do not constitute final judgments in a case.  *Cobell v. Norton*, 355 F. Supp. 2d 531,

539 (D.D.C. 2005) (Lamberth, J.).  Rule 54(b) provides that:

> any order or other decision, however designated, that adjudicates
> fewer than all the claims or the rights and liabilities of fewer than
> all the parties . . . may be revised at any time before the entry of a
> judgment adjudicating all the claims and all the parties' rights and
> liabilities.

FED. R. CIV. P. 54(b).  This Court may grant revision "as justice requires."  *Cobell v. Norton*, 224

F.R.D. 266, 272 (D.D.C. 2004) (Lamberth, J.).  While the phrase, "as justice requires," is

somewhat abstract, it refers to a court, in its broad discretion, determining whether

reconsideration is necessary under the relevant circumstances.  *Id.*

Here, the Court, in its discretion, finds that justice does not require vacating or revising

its dismissal order.  Nattah submits that new factual evidence exists in that plaintiff's counsel has

---

[7]  The Court notes that there is some authority for taking a different route to
accomplishing the same result that the Court today reaches as to both the Iraqi defendants and
Secretary Harvey.  The D.C. Circuit has held that "it is practical and fully consistent with
plaintiffs' rights and efficient use of judicial resources" for a district court to *sua sponte* dismiss
a plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) "'where the claimant
cannot possibly win relief.'"  *Baker v. Director, United States Parole Com'n*, 916 F.2d 725, 726
(D.C. Cir. 1990) (per curiam) (quoting *Omar v. Sea-Land Svc., Inc.*, 813 F.2d 986, 991 (9th Cir.
1987)).  This approach is proper "in cases where the plaintiff has not advanced a shred of a valid
claim."  *Id.*
      If this Court had granted Nattah's motion for leave to amend as to these defendants, the
Court would have been inclined to *sua sponte* dismiss the amended complaint.

filed a similar suit on behalf of another former Titan employee, Mark Shallal, who was allegedly hired to work in Kuwait as a linguist but was subject to Titan's attempted coercion to serve with "Army Intelligence" in Iraq.  (*See* Docket Entry [47] at 14); *see also* Complaint, *Shallal v. Gates*, No. 07-cv-2154 (D.D.C. Nov. 29, 2007).  The existence of a lawsuit making some of the same allegations that Nattah makes is insufficient to cause the Court to alter its order of dismissal, particularly in light of the Court's analysis in Part II.B.2.ii of this Opinion discussing the futility of claims against the previously dismissed defendant, Secretary Gates.

### D.   Titan's Motion to Dismiss

#### 1.   Standard of Review

When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction."  *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004).  A court considering a motion to dismiss for lack of jurisdiction must construe plaintiffs' complaint in plaintiffs' favor, accepting all inferences that can be derived from the facts alleged.  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (abrogating the prior standard which required appearance, beyond a doubt, that plaintiff can prove no set of facts in support of his claim that would entitle him to relief).  The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park Civic*

*Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing *Conley v. Gibson*, 355 U.S. 41,

47 (1957)).  Thus, in resolving a Rule 12(b)(1) or 12(b)(6) motion, the court must treat the

complaint's factual allegations as true and draw all reasonable inferences therefrom in the

plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 67 (D.C. Cir. 2003), cert. denied, 540

U.S. 1149 (2004); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir.

2003).  However, the Court need not accept asserted inferences or conclusory allegation that are

unsupported by the facts set forth in the complaint.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1276 (D.C. Cir. 1994).

### 2.    The Court Will Dismiss All Claims Against Titan

For the reasons set forth below, the Court will grant Titan's motion [38] to dismiss all

claims against Titan.[8]

### i.    Alleged Violations of International Law

Counts 3 and 19 of the amended complaint—alleging violations of the United Nations

Charter, the Hague Convention, the Geneva Convention, and other international law—must be

dismissed.  Plaintiff cannot assert a claim against Titan under the United Nations Charter

because that treaty provides no right of action against private entities such as Titan.  *See Comm.*

*of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 936 (D.C. Cir. 1988) (finding that

a provision of the United Nations Charter did not confer rights on private individuals).

Likewise, Titan fails to establish that the Geneva Convention provides for a cause of action

---

[8] Although the Court grants leave to file plaintiff's amended complaint as to Titan, Titan's motion to dismiss the original complaint applies equally well to the amended complaint, and the Court sees no need to permit Titan an additional opportunity to file a pleading based on this revised complaint.  Such an opportunity would merely serve to delay disposition of this matter.

against a private entity.[9]  *Holmes v. Laird*, 459 F.2d 1211, 1222 (D.C. Cir. 1972) (noting that the

corrective machinery in the Geneva Convention is non-judicial); *see also Huynh Thi Anh v. Levi*,

586 F.2d 625, 629 (6th Cir. 1978) (refusing to find a private right or duty in the Geneva

Convention).  "The Hague Conventions similarly cannot be construed to afford individuals the

right to judicial enforcement" and "they have never been regarded as law private parties could

enforce." *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 809 (D.C. Cir. 1984).  Simply put,

plaintiff's international law allegations have failed to state a claim upon which this Court may

grant relief.

### ii.     Slavery Claim

Count 5—slavery—will be dismissed.  Plaintiff claims that Titan agreed to sell him to the

Army.  (*See* Am. Compl. ¶ 239.)  According to Nattah, six unknown United States soldiers

pointed loaded weapons at him, told him that he was being drafted into the military, and that he

would be shot for desertion if he failed to report for duty.  (*See id.* ¶ 240.)  Nattah states that he

complied with this order and worked for the military in exchange for no compensation.  (*See id.*

¶ 241–42.)  However, in another portion of the amended complaint, plaintiff, rather than

asserting that he was not compensated for his labor, instead complains of not receiving "any sort

of overtime, combat, or hazardous duty pay to compensate for the risks or conditions."  (*Id.*

¶ 104.)  Additionally, in Count 12 of the amended complaint, plaintiff seeks relief for his alleged

wrongful termination from employment with Titan.  (*See id.* ¶¶ 306–09.)  Nattah even states that

---

[9] The Supreme Court has found that Article Three of the Geneva Convention can provide
prisoners of war with a claim against the government in a habeas action.  *See Hamdan v.
Rumsfeld*, 126 S. Ct. 2749, 2797 (2006).  This case is not a habeas action, Titan is not the
Government, and the Court does not interpret *Hamdan* as extending a right of action to cases
such as this.

he is entitled to and seeks reinstatement of his employee relationship with Titan.  (*See id.* ¶ 308, Requested Relief at 87.)

Plaintiff claims that "Department of Defense regulations on human trafficking, [the Trafficking Victims Protection Act], and the United Nations Convention on Elimination of all Forms of Slavery each create a private right of action to enforce the 13th Amendment."  (*See* Am. Compl. ¶ 246.)  This Court disagrees.  To the extent that plaintiff's slavery claim relies upon the Thirteenth Amendment, that amendment does not in itself create a private right of action.  *Holland v. Bd. of Trustees of the Dist. of Columbia*, 794 F. Supp. 420, 424 (D.D.C. 1992).  Similarly, plaintiff fails to provide a basis for his slavery claim under the Trafficking Victims Protection Act ("TVPA").  *See* 22 U.S.C. § 7108(a) (indicating that the President may assert an action under the TVPA but providing no private cause of action).  As for the United Nations Convention claim, the Court is aware of no such convention and assumes that plaintiff is speaking of the United Nations Slavery Convention.  *See* Slavery Convention, Sept. 25, 1926, 60 U.N.T.S. 253 (entered into force Mar. 9, 1927).  Plaintiff fails to establish any private cause of action based on the Slavery Convention and the Court knows of no such authority supporting such a claim.  Additionally, plaintiff fails to set forth any specific Department of Defense regulations that would support a private cause of action to enforce the Thirteenth Amendment.

Further, plaintiff cites several statutes in Title 18 of the United States Code, that he asserts create a private right of action to enforce the 13th Amendment.  (*See* Am. Compl. ¶¶ 251, 260–61 (citing 18 U.S.C. §§ 1581, 1583, 1584, 1589, 1590).)  Generally speaking, these statutes create criminal liability for enticement into forced labor, sale into slavery, and use or provision of forced labor; they do not create an independent means of asserting a private action.  However, 18 U.S.C. § 1595 expressly provides for a civil remedy for victims of violations of sections

1589, 1590, and 1591.[10]  *See* 18 U.S.C. 1595(a).  Yet, there is no indication that section 1595

provides any remedy for alleged violations of the three statutes that occur outside the United

States.[11]  The Court thus finds that Nattah's proposed extraterritorial application of these statutes

is improper.  Consequently, plaintiff's claims under Title 18 of the United States Code must be

dismissed for failure to state a claim.

Plaintiff also points to 42 U.S.C. §§ 1981(a), 1985, and 1994, as grounds for his claim.

(*See* Am. Compl. ¶ 259.)  Although each of these statutes applies only to territories or states of

the United States, plaintiff claims that Iraq should be considered a United States territory for

some or all of his period of captivity because "[t]he United States invasion of Iraq in 2003

overthrew and completely replaced the Iraqi government . . . and treated and acted as though Iraq

_____

[10]  Relevant here are sections 1589 and 1590.  Section 1589 creates a cause of action for knowingly providing or obtaining labor by threats or physical restraint.  *See* 18 U.S.C. § 1589. And, section 1590 creates liability for "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter . . . ."  18 U.S.C. § 1590.

[11]  One Court has engaged in an in-depth analysis of the possible extraterritorial application of section 1595's civil cause of action for violations of section 1589.  *See John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 999–1004 (S.D. Ind. 2007).  That Court concluded that 18 U.S.C. § 1589 did not apply extraterritorially to conditions on a Liberian rubber plantation and that plaintiff could not maintain a civil claim pursuant to the civil cause of action created by section 1595.  *Id.* at 1003–04.  Guiding the court's analysis was the "'longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the Untied States.'"  *Id.* at 1000 (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)).  Only in rare instances, is it possible to prove Congressional intent to apply a statute extraterritorially despite not clearly stating so in the statute itself.  *See id.* at 1000–01.  The section 1589 ban on forced labor is not such an instance. That section contains no express indication of intent to create extraterritorial effect; further, "Congress has been acquainted with the question of the international reach in this context of [closely related statutes addressing slavery] for more than 200 years" and "knows how to legislate with extraterritorial effect in this field."  *Id.* at 1002.  This Court agrees with the *Bridgestone* court's finding.  And, although *Bridgestone* did not determine the extraterritorial applicability of section 1590, this Court finds no explicit Congressional intent to create a civil cause of action for conduct occurring wholly outside of the United States.

were a protectorate and/or colony." (*Id.* ¶ 259.) This allegation is insufficient to survive Titan's motion to dismiss. There is simply no authority for the proposition that Iraq is a United States territory for the purposes of plaintiff's claim.

For the reasons stated above, the Court must dismiss plaintiff's slavery claim.[12] However, even if plaintiff could clear one or more of the abovementioned bars to stating a claim, the Court would remain wholly unconvinced that Nattah had plead sufficient facts to create a plausible claim that Titan was involved in any slavery, forced labor, or the like; dismissal would still be warranted.

### iii. Right to Travel

In Count 6, plaintiff alleges that "Titan violated plaintiff's constitutional right to travel by making forced labor a term and condition of plaintiff's employment and by agreeing that the Army could (1) force plaintiff to go where the Army pleased and (2) prevent Nattah from leaving the military encampment and returning to Kuwait City." (Am. Compl. ¶ 270.) This claim will be dismissed because plaintiff fails to demonstrate how the constitutional right to travel could plausibly encompass his allegations. Generally speaking, the constitutional right to travel refers to interstate travel. *See e.g., Atty. Gen. of New York v. Soto-Lopez*, 476 U.S. 898 (1986). The right to international travel is also a constitutionally protected right and "an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (citing *Califano v. Gautier Torres*, 435 U.S. 1, 4 n.6 (1978)). Yet, this right is

---

[12] The Court will also dismiss Count 15—"Slavery, Human Trafficking, and Fraud." (*See* Am. Compl. ¶¶ 327–31.) That count alleges an action under the United Nations "Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children." (*See id.* ¶ 327.) The Court is aware of no authority that would permit plaintiff to assert a private right of action against Titan under this protocol.

best described as the freedom to travel to foreign countries.  *See id.* at 306–07 (discussing whether revocation of a passport violated the international right to travel).

Assuming the truth of Nattah's alleged facts, he fails to state a claim that Titan violated the constitutional right to travel.  Considering the international nature of the amended complaint, Nattah must be attempting to state a claim with regard to the international right to travel.  Yet, he has failed to state a plausible basis for finding that Titan violated this due process right.  Thus, the Court must dismiss plaintiff's right to travel claim.

### iv.    Fraud Claim

Count 9—fraud—will be dismissed for failure to state a claim upon which relief can be granted.  In that count, Nattah contends that Titan, at a career fair, "fraudulently enticed Plaintiff to fly to the Middle East."  (Am. Compl. ¶ 287.)  This enticement included "promising various benefits to working with the company" when Titan "knew or should have known that the company could not possibly fulfill the terms of employment Nattah relied upon."  (*Id.* ¶¶ 280, 286.)

At common law, fraud consists of five elements: "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with intent to deceive, and (5) an action that is taken in reliance upon the representation. . . ."  *See Park v. Sandwich Chef, Inc.*, 651 A.2d 798, 801 (D.C. 1994) (quoting *Hercules & Co. v. Sharma Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992)).  Further, under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud . . . ."  FED. R. CIV. P. 9(b).

The Court finds that Nattah's assertions fail to set out with particularity a plausible claim for fraud.  Vague references to reliance on promises made at a career fair are simply not sufficient to survive Titan's motion to dismiss.

### v.      Breach of Employment Contract

Plaintiff's breach of employment contract claims—Count 10—will be dismissed.  Titan's letter offering employment to Nattah clearly indicated that "[e]mployment at Titan Corp. is a voluntary relationship between the Company and each employee, and nothing in this offer of employment constitutes an express or implied contract between Titan Corp. or any employee." (*See* Offer Ltr., Ex. 1 to Mot. to Dismiss.)  On January 17, 2003, Nattah signed the offer letter indicating that he accepted employment in accord with the letter's terms.  (*See id.*)  Plaintiff attempts to discount the importance of the signed offer letter by stating that prior to accepting the terms of the offer letter, Nattah accepted employment after a "face-to-face interview" and oral offer of an employment contract.  (*See* Opp. to Mot. to Dismiss at 13.)  However, at other times, plaintiff appears to call the offer letter itself a "contract," which it is clearly not.  (*See* Am. Compl. ¶ 97.)  This Court finds plaintiff's factual claim implausible given the offer letter's clear import that would have put any potential employee on notice of the at-will nature of the employment relationship.  Thus, given that plaintiff's employment was at-will, the Court must grant dismissal of Nattah's breach of contract claim.

### vi.      Iraqi Ministry of Labor Termination Notification Law

In Count 11, plaintiff purports to assert a claim on behalf of himself and other similarly situated individuals that Titan violated Iraqi law by failing to notify the Iraqi Ministry of Labor and Social Affairs or the President of the General Federation of Employees' Trade Unions of the termination of its employees.  (*See* Am. Compl. ¶¶ 295–305.)  Thus, plaintiff states that none of the terminations are valid, that they must be vacated, and that terminated employees are entitled to lost wages and damages.  (*See id.* ¶ 305.)

Plaintiff points to no specific provision of Iraqi or American law that would support his

claim and his vague assertions regarding the existence of such a law is insufficient to defeat

Titan's motion to dismiss.  Plaintiff's Iraqi labor law claim will be dismissed.[13]

### vii.    Wrongful Termination Claim

Count 12 of the amended complaint relies on the charge that Titan terminated plaintiff

and other similarly situated employees for stated reasons that were "false, mistaken, and

vexatious." (*See* Am. Compl. ¶ 309.)  This is nothing more than a conclusory allegation that

Nattah and others were wrongfully terminated.  Plaintiff provides no reason that Titan stated for

his termination and no indication of how that reason was false, mistaken or vexatious.  Bare

statements of legal conclusions such as Nattah's are insufficient to defeat a motion for summary

judgment.  *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation omitted) (noting

that courts are not bound to accept as true legal conclusions couched as factual allegations).

Accordingly, Nattah's wrongful termination claim will be dismissed.

### viii.    Hours of Work and Overtime Claim

Count 13—"hours of work and overtime"—claims that employers may not require

employees to work more than "one shift per day" and that the maximum allowable shift ranges

between seven and eight hours depending on the time of day.  (Am. Compl. ¶ 311.)  Titan

allegedly violated this rule along with a rule that employees may not be required to work on their

day of rest, a rule that both salaried and hourly employees must be paid extra for overtime and

"dangerous work," and other labor rules.  (*Id.* ¶¶ 312–320.)  Although the amended complaint is

not a model of clarity, it appears that all of these claims are based on unspecified provisions of

---

[13]  Assuming plaintiff had sufficiently plead a claim based upon Iraqi labor law, Titan vigorously argues that the doctrine of *forum non conveniens* would justify dismissal of plaintiff's claim.  (*See* Mot. to Dismiss at 22–26.)  This Court would be inclined to consider such an argument.

Iraqi law.  (*See id.* ¶ 320.)

The vague factual assertions and references to unknown rules or laws in this count are insufficient to survive defendant's motion to dismiss.[14]  Count 13 will be dismissed.

### ix.    Due Process Claim

Count 16—denial of substantive and procedural due process—alleges that Titan collaborated with the Department of Defense to deprive Nattah and others of due process by withholding and delaying employee security clearance applications from relevant U.S. Government agencies.  (Am. Compl. ¶¶ 332–41.)  According to plaintiff, Titan is responsible for submitting accurate clearance applications on behalf of its employees.  (*Id.* ¶ 337.)  Nattah asserts that Titan, by impeding this process, prevented employees from quitting their Titan jobs to work for another contractor.  (*Id.* ¶ 338.)  Further, plaintiff claims that Titan is able to keep employees "meek and servile" because Titan receives notice of security clearance approvals directly from the Government, which gives Titan the opportunity to deceive employees regarding their clearance status.  (*Id.* ¶ 339–40.)

The Court will dismiss plaintiff's due process claim because the conduct of which plaintiff complains was private conduct, not official conduct subject to the strictures of the Fifth and Fourteenth Amendments.  *See Chandler v. W.E. Welch & Assocs., Inc.*, No. 06-cv-794, 2008 WL 312454, at *3 (D.D.C. Feb. 5, 2008); *see also Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) (indicating that with few exceptions, due process protections do not apply to private entities).  Here, Titan's alleged responsibility for transmitting and receiving clearance

---

[14] Again, the Court notes Titan's vigorous *forum non conveniens* argument and would likely be receptive to such an argument if plaintiff had otherwise succeeded in stating a claim based on Iraqi law.

paperwork to and from the Government is insufficient to consider Titan a state actor rather than private entity.  Thus, this claim must be dismissed.[15]

### x.    Breach of Contract:  Security Clearance Applications

Count 17, plaintiff's second breach of contract cause of action is based on Titan's role in processing security clearance applications.  (*See* Am. Compl. ¶¶ 342–49.)  Here, Nattah alleges that Titan breached both its contract with employees and its contract with the Government by taking certain actions regarding clearance applications.  (*Id.* ¶ 347.)  Having already determined that no employment contract exists, the only possible claim is on the contract between Titan and the Government.  Nattah contends that he is suing in the capacity of a third party beneficiary and that Titan breached its Government contract by "demanding employees make up or guess at unknown information," giving employees insufficient time to complete their paperwork, and failing to transmit applications.  (*Id.* ¶ 347.)  These actions allegedly resulted in the unnecessary denial of applications and an increase in the amount of time needed to process clearance applications.  (*Id.* ¶¶ 348–49.)

This claim must be dismissed because plaintiff alleges no facts that would entitle him to sue as a protected third party beneficiary.  There is broad consensus among courts that for one to be able to enforce a contract to which he is not a party, he must at least show that it was intended for his direct benefit.  *See* 13 RICHARD A. LORD, WILLISTON ON CONTRACTS §37:8 (4th ed. 2007); *see e.g., Fields v. Tillerson*, 726 A.2d 670, 672 (D.C. 1999) (citations omitted) (noting that a third party may enforce a contract if the contracting parties intended the third party to

---

[15]  Even if Titan were considered a state actor subject to due process claims, the Court would be hesitant to determine that there is a due process property right in Titan's accurate and prompt transmission of clearance applications and in notifying employees of the Government's response to the applications.

benefit directly thereunder).  Plaintiff has not plead facts that indicate that the alleged contract between Titan and the Government regarding how security clearance applications would be processed was intended to directly benefit Nattah and other employees.  Thus, the Court will dismiss plaintiff's breach of contract claim.

**xi.      False Claims Act / Whistle-Blower Claim**

Lastly, Count 18 of the amended complaint alleges that Titan violated the False Claims Act by instructing employees to fabricate information on their security clearance paperwork and then transmitting this paperwork to the Government with the knowledge that applications contained false information.  (Am. Compl. ¶¶ 350–53.)  Titan allegedly invoiced the Government for time its translators spent filling out clearance applications that contained false information.  (*Id.* ¶ 352.)  According to Nattah, the Government would not have paid these invoices if it had known that the clearance applications contained false information.  (*Id.*)

The False Claims Act creates liability for a government contractor who "knowingly presents or causes to be presented, to the [Government] a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1).  Private individuals are permitted to bring False Claims Act suits as relators on behalf of the Government.  *See* 31 U.S.C. § 3730(b)(1).  Such suits however must be brought in the name of the Government.  *See id.*  Additionally, relators must follow special pleading rules including filing the complaint in camera and under seal for at least 60 days, and not serving it on the defendant until the Court orders service.  *See id.* § 3730(b)(2).  Here, Nattah attempts to file suit on behalf of the Government but does not follow these procedures outlined in section 3730(b).  Thus, the False Claims Act action must be dismissed.[16]

---

[16] Further, even if he had filed suit in accord with the section 3730(b) requirements, Nattah's False Claims Act suit would still be dismissed for failure to comply with Federal Rule

### E.     Dismissal as to Six Unknown Government Employees

Plaintiff's amended complaint names as defendants "six unknown United States Government employees" in their individual capacities.  According to plaintiff, these officials "directly or indirectly formulated and implemented the Administration policy authorizing detention and suspension of the writ of habeas corpus for anyone found on the battlefield in Iraq and Afghanistan.  Some of the unknown government employees include U.S. Army intelligence officers and non-commissioned officers who kidnapped, enslaved, and drafted Abdulwahab Nattah into the United States Army serving in Iraq."  (Am. Compl. ¶ 1.)  More specifically, under plaintiff's slavery claim, he asserts that "six unknown Army Intelligence soldiers pointed loaded weapons at Nattah[,] told him he was being drafted into the U.S. military[,]" and that he would be shot if he failed to report for duty.  (*Id.* ¶ 240.)  Plaintiff brings three causes of action against the six unknown government employees: Count 3, Geneva Convention; Count 5, slavery; and, Count 6, right to travel.  (*Id.* ¶ 5.)  Nattah states that he intends to seek the names of the unknown defendants "through the discovery process."  (Docket Entry [47] at 3.)

The Geneva Convention claim will be dismissed because this Court is aware of no authority supporting a private cause of action under that convention against defendants sued in

---

of Civil Procedure 9(b).  That rule subjects complaints filed under the False Claims Act to heightened pleading requirements wherein "the circumstances that must be pleaded with specificity are matters such as the time, place, and contents of the false representations. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 552 (D.C. Cir. 2002) (citation omitted); *see* FED. R. CIV. P. 9(b).  Claimants must also "typically allege the identity of the person who made the fraudulent statement, the time, place and content of the misrepresentation, the resulting injury, and the method by which the misrepresentation was communicated."  *Shekoyan v. Sibley Inern. Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002).  Plaintiff does not offer the type of specificity that Rule 9(b) requires.

their individual capacities.[17]   The right to travel claim must also be dismissed for the reasons set

forth in Part II.D.2.iii of this Opinion—namely that plaintiff has failed to state a plausible claim

that the six unknown defendants interfered with his right to international travel.

As for the "slavery" claim, to the extent that plaintiff asserts a *Bivens* tort claim under the

Fifth and Thirteenth Amendments, that claim will be dismissed.  As defendants argue, that claim

must fail because discovery of the defendants' true identities followed by an amendment to

include the newly identified parties would be time-barred because the suit against them would

not relate back to the date of original pleading.   (*See* Opp. to Mot. for Leave to File at 8–10.)

Under Federal Rule of Civil Procedure 15(c), "an amended complaint does not relate

back to the date of the original complaint unless the potential defendant knew or should have

known that the plaintiff failed to name it originally only because of a mistake concerning its

identity."  *Rendall-Speranza v. Nassim*, 107 F.3d 913, 919 (D.C. Cir. 1997).  "Mistake of

identity" is not interpreted broadly but rather refers to whether "it should be apparent to [the

defendant] that he is the beneficiary of a mere slip of the pen."  *Id.* at 918.  Consistent with this

interpretation, the substitution of a real party defendant for a "John Doe" defendant does not

constitute such a misnomer, but rather constitutes a "changing" of a party such that relation back

is not permitted.  *See e.g, King v. One Unknown Fed. Correctional Officer*, 201 F.3d 910, 914

(7th Cir. 2000); *Wayne v. Jarvis*, 197 F.3d 1098, 1103–04 (11th Cir. 1999), *overruled on other*

*grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003); *Barrow v. Wethersfield*

---

[17] As the Court previously noted, the Supreme Court has found that Article Three of the Geneva Convention can provide prisoners of war with a claim against the government in a habeas action.  *See Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2797 (2006).  This case is not a habeas action and defendants are sued in their individual capacities.  Thus, the Court does not interpret *Hamdan* as extending a right of action to cases such as this.

*Police Dep't*, 66 F.3d 466, 469–70 (2d Cir. 1995).  Thus, in the present case, claims as to the six

unknown defendants would not be considered filed until the date that their actual names were

included in the suit.

Mr. Nattah's purported injuries occurred no later than July 24, 2003, the date that he

claims that he returned to the United States.  (*See* Am. Compl. ¶ 117.)  As of March 2008,

plaintiff has not determined the names of the six unknown defendants.  Accordingly, for statute-

of-limitations purposes, the relevant time period will be greater than four and a half years.

The applicable statute of limitations in this case is at most three years,[18] an indication that

the claim against six unknown employees is utterly futile.  Thus, the Court will dismiss Nattah's

"slavery" action.

---

[18]  When federal actions contain no statute of limitations, courts ordinarily look to
analogous provisions of state law as a source for the federal limitations period.  *See Doe v.
United States Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  And, here this Court will
look to the relevant personal injury statute of limitations.  *See Delgado-Brunet v. Clark*, 93 F.3d
339, 342 (7th Cir. 1996) (considering *Bivens* actions as governed by the personal injury statute
of limitations and tolling laws in the state where the alleged injury occurred); *see also Wilson v.
Garcia*, 471 U.S. 261, 272–75 (1985), *superceded by statute as recognized by Jones v. R.R.
Donnelley & Sons Co.*, 541 U.S. 369, 377–81 (2004) (holding that civil rights claims, at least
those arising under 42 U.S.C. § 1983, were subject to the applicable state's personal injury
statute of limitations).  The personal injury statute of limitations is three years in the District of
Columbia.  *See* D.C. CODE § 12-301(8).  Plaintiff's reply notes that his alleged injury did not
occur in the District of Columbia, and that thus either the Kuwaiti or Iraqi statute of limitations
should apply.  However, plaintiff offers no support for the proposition that this Court is bound by
foreign law.  Kuwaiti and Iraqi law are not analogous provisions of *state law*, and this Court is
not bound to apply their law.  *See Van Tu v. Koster*, 364 F.3d 1196, 1198–99 (10th Cir. 2004)
(refusing to look to Vietnamese law for the purpose of borrowing a *Bivens* statute of limitations,
and instead applying the statute of limitations of the state where plaintiff elected to file suit).
This Court will instead look to the law of the District of Columbia, the place where plaintiff
voluntarily filed suit.

**III.**    <u>**CONCLUSION**</u>

For the above reasons, the Court will GRANT in part and DENY in part plaintiff's motion for leave to file first amended complaint, and the Court will DENY both plaintiff's motion to join additional defendants and his motion to vacate the Order dismissing three federal defendants.  The Court will GRANT Titan's motion to dismiss.  This case will be dismissed with prejudice.

A separate order shall issue this date.


Signed by United States District Judge Royce C. Lamberth, March 31, 2008.