UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DAVID M. BOWIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-948 (RCL) |
| | ) | |
| CHARLES C. MADDOX, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on plaintiff's motion for judgment as a matter of law [124] or, in the alternative for a new trial [125]. Upon consideration of the motion, defendants' opposition, the reply, the entire record herein, and applicable law, the Court will DENY plaintiff's motion.

I.  **BACKGROUND**

Plaintiff David M. Bowie was employed as the Assistant Inspector General for Investigations ("AIGI") for the District of Columbia Office of Inspector General ("DCOIG") from November 1997 until his termination in August 2002. Plaintiff alleges that his termination was a result of retaliation by defendants in response to plaintiff's participation in statutorily protected activity. Specifically, plaintiff contends that the DCOIG terminated his employment because he engaged in protected activity including: (1) preparing an affidavit relating to the termination of another DCOIG employee, Emmanuel Johnson; (2) complaining about the treatment of his DCOIG division; and, (3) anticipating being called as a witness in the Emmanuel Johnson trial. (*See* Reply at 5.) During a six-day jury trial, plaintiff attempted to establish that

defendants were liable for retaliation against plaintiff in violation of both Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act ("DCHRA").  On May 25, 2007, the jury returned a verdict for defendants on each count.  Plaintiff now moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or, in the alternative, for a new trial pursuant to Rule 59.

## II.    ANALYSIS

### A.    Motion for Judgment as a Matter of Law

#### 1.    Legal Standard

A court must only grant a motion for judgment as a matter of law made under Rule 50(b) if "no reasonable juror could reach the verdict rendered in th[e] case." *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 735 (D.C. Cir. 1998) (quoting *Anderson v. Group Hospitalization, Inc.*, 820 F.2d 465, 473 (D.C. Cir. 1987)).  Thus, "[j]udgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in [defendants'] favor." *Muldrow ex rel. Est. of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007) (citation omitted).  Nevertheless, the evidence presented by the plaintiff must be "significantly probative," rather than "merely colorable" for the jury's verdict to stand.  *Siegel v. Mazda Motor Corp.*, 878 F.2d 435, 437 (D.C. Cir. 1989).  A court may not assess witness credibility nor weigh the evidence.  *Mackey v. United States*, 8 F.3d 826, 829 (D.C. Cir. 1993).  And, entering judgment as a matter of law is strongly disfavored because it intrudes upon the rightful province of the jury.  *Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir. 1994).

## 2. Plaintiff Is Not Entitled to Judgment as a Matter of Law

For the reasons set forth below, plaintiff's motion for judgment as a matter of law must be denied. The evidence in this case is not so one-sided that a reasonable jury could have only reached one determination—that defendants illegally retaliated against plaintiff.

At trial, plaintiff had the burden of establishing three elements: (1) that he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and, (3) that there was a causal connection between the protected activity and the adverse action. *Brown v. Brody*, 199 F.3d 446, 452–53 (D.C. Cir. 1999); *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998). According to plaintiff, the third requirement, causation, was the only element at issue in this case.[1] (*See* Pl.'s Mem. [138] at 4–5.) In plaintiff's view, no reasonable jury could have found for defendants on causation. Plaintiff asserts—contrary to defendants' claims—that the temporal proximity between his protected activity and termination was quite short. (*See id.* at 6–7.) Plaintiff's preferred start-date for measuring this proximity is based not on his May 2000 affidavit in the *Johnson* matter, but rather on his July 2002 complaint of disparate treatment. (*See id.*) Additionally, plaintiff notes that although a close temporal relationship together with an employer's knowledge of its employee's protected activity may alone establish the required causal connection, such a temporal relationship is not required to establish causation. *See Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000). Plaintiff's arguments here are not compelling.

---

[1] Defendants concede that the second element—adverse employment action—was satisfied. However, defendants do not concede the first element, protected activity. While preparation of plaintiff's affidavit certainly appears to be a protected activity, defendants raise an issue regarding whether plaintiff established defendants' *knowledge* of the protected activity. In any event, this Opinion—like the motion, opposition, and reply—focuses on causation. Because the Court ultimately finds that reasonable minds could have found that plaintiff had not carried his burden on causation, a more in-depth discussion of protected activity is not necessary.

Regardless of the issues plaintiff raises regarding the temporal relationship between plaintiff's protected activity and his termination, the jury heard a significant amount of evidence that would have enabled reasonable men and women to find that plaintiff's termination was caused by his job performance rather than by any protected activity.  For example, testimony was introduced that plaintiff's division was disorganized, lacked direction and leadership, exhibited poor morale, and suffered from poor report writing.  (*See* Trial Tr., May 17, 2007, at 16–31.)  Another witness testified that plaintiff's management techniques were deficient and that his division suffered from untimely reports, delays in providing feedback to inspectors and investigators, and problematic writing and reviewing of reports.  (*See id.* at 131–32; 137–81.)  The jury heard consistent testimony from several other witnesses regarding plaintiff's alleged professional shortcomings.  As a whole, this testimony tended to corroborate the legitimacy of the 2002 "mid-year performance evaluation" that lists reasons defendants ultimately gave for plaintiff's termination.  (*See* Evaluation, Def. Ex. 19.)

Plaintiff essentially asks this Court to discount the evidence favorable to defendants and to render judgment for plaintiff because he has submitted his own favorable evidence.  Given that this Court may not assess the credibility of such testimony or weigh it against evidence that would tend to establish that poor job performance was but a pretext for plaintiff's termination, this Court's role is confined to verifying that the jury's verdict was one that a reasonable jury could have reached.  The Court does not doubt that plaintiff's evidence tended to support his retaliation claim; yet, the jury, as trier of fact, determined that plaintiff had failed to establish a successful Title VII or DCHRA claim.  The evidence that the jury evaluated regarding plaintiff's

job performance was not so one-sided in favor of plaintiff so as to make its verdict unreasonable. Thus, this Court may not grant judgment as a matter of law in favor of plaintiff.

### B. Motion for New Trial

#### 1. Legal Standard

A court should only grant a motion for new trial pursuant to Rule 59 "where the court is convinced that the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" *Nyman v. Fed. Deposit Ins. Corp.,* 967 F. Supp. 1562, 1569 (D.D.C. 1997) (quoting *Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 176 (D.D.C. 1986)); *see Long v. Howard Univ.*, 512 F. Supp. 2d 1, 6 (D.D.C. 2007). "Generally, a new trial may only be granted when a manifest error of law or fact is presented." *Long*, 512 F. Supp. 2d at 6 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 467 F. Supp. 2d 74, 87 (D.D.C. 2006)) (quotation marks omitted). "Moreover, 'the court should be mindful of the jury's special function in our legal system and hesitate to disturb its finding.'" *Id.* (quoting *Wild v. Alster*, 377 F. Supp. 2d 186, 189 (D.D.C. 2005)). The disposition of a motion for new trial is "entrusted to the sound discretion of the trial court." *Grogan v. Gen. Maint. Serv. Co.*, 763 F.2d 444, 447 (D.C. Cir. 1985) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

#### 2. Plaintiff Is Not Entitled to a New Trial

Plaintiff offers three proposed bases for a new trial: (1) the Court erred in denying witness Alfred Miller's testimony regarding Report of Investigation ("ROI") production of plaintiff's division for dates subsequent to plaintiff's termination; (2) the Court erred in allowing testimony regarding investigations where defendants refused to provide plaintiff with reports and drafts during discovery; (3) the Court erred in informing the jury that the *Johnson v.*

*Maddox* court had found no discrimination. *See Johnson v. Maddox*, 270 F. Supp. 2d 38 (D.D.C. 2003), *aff'd*, 117 Fed. App'x 769 (D.C. Cir. 2004). For the reasons set forth below, this Court, in its discretion, finds that none of plaintiff's arguments support granting a new trial.

First, the Court sees no reason to disturb its prior ruling on the issue of Mr. Miller's testimony. (*See* Trial Tr., May 14, 2007, at 116–17). At trial, the Court sustained defendants' objection to introducing post-employment statistics on the grounds that such figures were not relevant to plaintiff's job performance. (*Id.*) According to plaintiff, a significant decrease in the production of ROIs following plaintiff's termination, is alone, sufficient to refute all evidence of plaintiff's "poor work performance." (*See* Pl.'s Mem. [138] at 15.) The Court does not agree. Federal Rule of Evidence 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Court finds that evidence regarding the performance of plaintiff's successors in the years after his termination is not relevant to plaintiff's own job performance. Even if subsequent AIGIs oversaw a division less productive than that which existed under plaintiff's direction, such information would not be of probative value in establishing the alleged pretext of defendants' stated termination reasons. Continued poor performance after plaintiff's departure is simply not of consequence when evaluating plaintiff's earlier performance and plaintiff was not prejudiced by being unable to present such evidence.

Second, plaintiff claims that the Court erred in allowing defendants to introduce testimony concerning investigations where defendants refused to provide plaintiff with reports and drafts during discovery. (*See* Pl.'s Mem. [138] at 16.) Plaintiff contends that he never

received requested documentation that would have permitted rebuttal of allegations of poor work performance on particular investigations.  (*See id.*)  Specifically, plaintiff alleges that defendants failed to provide plaintiff with a final report regarding the Robert Rigsby investigation, an investigation that defendants claim plaintiff never completed.  (*See id.*; Reply at 11.)  Defendants respond that they provided the Rigsby report during discovery.  (*See* Opp. at 12.)  Even assuming that plaintiff is correct in his assertion that defendants failed to produce documents related to the Rigsby and other investigations, this Court would remain unconvinced that the jury verdict was a clear miscarriage of justice.  Plaintiff had ample opportunity to present his case and would not be highly prejudiced by having not receiving such a report during discovery.  This Court is particularly disinclined to grant relief for plaintiff at this late date on the grounds of a discovery dispute that (1) could have been resolved when the testimony to which plaintiff objects was introduced at trial, and (2) was not of great detriment to plaintiff's ability to proceed.

Finally, plaintiff contends that the Court erred by failing to make clear to the jury that the District Court and Court of Appeals' holdings in *Johnson v. Maddox* were not relevant to litigation issues in this case.  However, plaintiff fails to allege that the Court's instructions were legally erroneous.  The Court gave the jury no instruction that would have left the impression that the *Johnson* outcome had a bearing on plaintiff's ability to establish a retaliation claim, and the jury received legally correct instructions regarding what plaintiff had to establish to justify a verdict in his favor; that is all that the law requires.  *See Columbia Plaza v. Sec. Nat'l Bank*, 676 F.2d 780, 787 n.4 (D.C. Cir. 1982) (noting that "as long as the instructions provided by the trial judge state the applicable law correctly, the form of the language used can be left to the trial court's discretion"); *Miller v. Poretsky*, 595 F.2d 780, 788 (D.C. Cir. 1978) (stating that "[a]s

long as a district judge's instructions are legally correct . . . he is not required to give them in any particular language").

Additionally, when the Court took judicial notice of the *Johnson v. Maddox* holdings, it specifically instructed plaintiff that he could include an instruction in the final jury instructions regarding the fact that plaintiff's success on the merits was in no way dependant on Emmanuel Johnson's success at trial. (*See* Trial Tr., May 18, 2007, at 78–79.)  Yet, when plaintiff had an opportunity to propose such a final instruction, rather than do so, plaintiff only requested that the jury be informed of the date when Mr. Johnson's complaint was filed. (*See* Trial Tr., May 21, 2007, at 103.)  Plaintiff made no other objections as to the Court's jury instruction regarding the *Johnson* matter. (*See id.* at 97; 102–03.)  Thus, plaintiff had ample opportunity to include an instruction regarding the weight or lack thereof that the jury should have attributed to the *Johnson* outcome.  Plaintiff's failure to raise this issue as an objection to the proposed final jury instructions now bars his post-trial claim on those grounds.

### III.   CONCLUSION

For the reasons set forth above, plaintiff David M. Bowie's motion for judgment as a matter of law [124] or, in the alternative for a new trial [125] will be DENIED.

A separate order shall issue this date.


Signed by United States District Judge Royce C. Lamberth, March 31, 2008.