UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DAVID M. BOWIE, Pro Se ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-948 (RCL) |
| ) | |
| CHARLES C. MADDOX et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff David M. Bowie moves under Federal Rule of Civil Procedure 60 for relief from this Court's order of March 31, 2008 denying plaintiff's motion for judgment as a matter of law and motion for a new trial. Plaintiff also moves for post-judgment discovery. Upon consideration of the motions [150, 159], the oppositions [155, 160], the replies [158, 161], the entire record of the case, and the applicable law, the Court concludes that the motions should be denied.

**I. Background**

In August 2002, plaintiff was terminated from his position in the District of Columbia Office of the Inspector General ("DCOIG"). (Mem. Op. [146] at 1.) Plaintiff filed suit, alleging wrongful termination and violation of other federal and District of Columbia employment and civil rights laws. (Complaint [1] at 50–51.) On May 25, 2007, the jury returned a verdict for defendants on each claim. (Verdict Form [120] at 1–5.) Plaintiff moved for judgment as a matter of law or, in the alternative, for a new trial. (Mot. for J. as a Matter of Law [124] at 1.) This Court denied the motion on March 31,

2008.  (Order [147] at 1.)  On March 31, 2009 at 10:57 PM, plaintiff filed a motion for relief from that order.  (Pl.'s Mot. for Relief [150-2] Ex. R.)

Plaintiff alleges that the verdict and judgment in his case were procured through fraud when a fraud perpetrated in a separate case entered the proceedings.  (Pl.'s Mot. for Relief [150] at 2.)  In that separate case, *Johnson v. Maddox*, 270 F. Supp. 2d 38 (D.D.C. 2003), *aff'd sub nom. Johnson v. Williams*, 117 F. App'x. 769 (D.C. Cir. 2004), Johnson sued his former DCOIG supervisor for wrongful termination and retaliation.  An affidavit was submitted on behalf of plaintiff, who worked at the DCOIG at the time of Johnson's dismissal.  (Pl.'s Mot. for Relief [150] Exs. K, M.)  Plaintiff asserts that he did not sign or otherwise approve the affidavit, which discussed plaintiff's relationship with Johnson and the events leading to Johnson's termination.  (*Id.* Exs. H, M.)  Plaintiff contends that the affidavit was a forgery and that defendants and their attorneys lied about its authenticity.  (*Id.* at 6–10.)  Because this Court "relied upon the fraudulent assertions of defendants in Johnson v. Maddox," plaintiff contends that he was denied a "fair and impartial trial" and "the ability to fairly and fully present his case."  (*Id.* at 3.)  He also claims defendants and their attorneys perpetrated various other acts of fraud, which are discussed below.

**II. Legal Standard**

Plaintiff proceeds *pro se* in this matter, therefore the Court will construe his filings liberally.  *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).

Plaintiff's fraud claims arise under the Court's statutory and equitable powers.  First, Rule 60(b)(3) permits a court to relieve a party from a "final judgment, order, or proceeding" for "fraud . . . misrepresentation, or misconduct by an opposing party."

(Pl.'s Mot. for Relief [150] at 1.) Second, the Court's equitable power permits it to set aside judgments based on "fraud on the court."[1] (*Id.* at 2.) Accordingly, plaintiff seeks relief from judgment, an order to schedule discovery, and leave to file independent actions for fraud upon other courts. (*Id.* at 28; Pl.'s Mot. for Disc. [159] at 1.)

A motion for relief from judgment under Rule 60(b)(3) must be filed "within a reasonable time" and "no more than a year after the entry of the judgment or order . . . ." FED. R. CIV. P. 60(c)(1). "What constitutes a 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Osborne v. Homeside Lending, Inc.*, 379 F.3d 277, 283 (5th Cir. 2004) (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)).

"Fraud on the court" is a claim that exists to protect the integrity of the judicial process, and therefore a claim for fraud on the court cannot be time-barred. *See* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.21[4][g] & n.52 (3d ed. 2009) (citing *Lockwood v. Bowles*, 46 F.R.D. 625, 634 (D.D.C. 1969)). Although the requirements for a successful claim of fraud on the court elude precise definition, several guiding principles emerge from the case law. First, the fraud must be egregious.[2] "'Fraud upon the court' . . . embrace[s] only that species of fraud which does or attempts to[] subvert the integrity of the court itself, or is a fraud perpetrated by officers of the

---

[1] FED. R. CIV. P. 60(d)(3) provides that "[t]his rule does not limit a court's power to set aside judgment for fraud on the court." *See also Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245–46 (1944) (courts possess the equitable power "to set aside fraudulently begotten judgments").

[2] Fraud on the court does not encompass "ordinary fraud," and thus must be distinguished from Rule 60(b)(3), which permits relief from judgment even for unintentional misrepresentations. MOORE ET AL., *supra*, § 60.43[1][a]. "[I]f fraud that may form basis of independent action 'is not kept within proper limits but is ballooned to include all or substantially all species of fraud within 60(b)(3) then the time limitation upon 60(b)(3) motions will be meaningless.'" *Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir. 1995) (quoting 7 MOORE ET AL., FEDERAL PRACTICE ¶ 60.33 (1995)).

court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct." *Synanon Church v. United States*, 579 F. Supp. 967, 974 (D.D.C. 1984) (quoting 7 MOORE ET AL., FEDERAL PRACTICE ¶ 60.33 (1995)); *see also England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960) (fraud on the court requires "an unconscionable plan or scheme which is designed to improperly influence the court in its decision") (citing *Hazel-Atlas*, 322 U.S. 238). An "indispensable" element is that the fraud "prevented a party from presenting his case." *Reintjes*, 71 F.3d at 48 (citing *Chicago, R.I. & P. Ry. v. Callicotte*, 267 F. 799, 810 (8th Cir. 1920)). Second, the perpetrator of the fraud must possess a sufficient mental state. One list of essential elements requires the fraudulent conduct to be "intentionally false, wilfully blind to the truth, or [] in reckless disregard for the truth . . . ." *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993); *cf. Sununu v. Philippine Airlines, Inc.*, 638 F. Supp. 2d 35, 41 (D.D.C. 2009) (listing knowledge of falsity and intent to deceive as elements of common law fraud). Third, the extraordinary step of setting aside a judgment requires "clear and convincing" evidence of fraud on the court. *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1476–77 (D.C. Cir. 1995).

**III. Discussion**

*A. Timeliness of Plaintiff's Rule 60(b)(3) Motion*

      The order from which plaintiff seeks relief was entered on March 31, 2008. Plaintiff asserts that he filed his motion for relief from that judgment exactly one year later on March 31, 2009. Defendants argue that the motion was not actually filed until

April 6, 2009, and not docketed until April 28.[3]  (Defs.' Mem. of P. & A. [155] at 1–2.) If the motion was filed later than March 31, 2009, it would have to be denied as untimely because Rule 60(b)'s one-year time limit is inflexible.  *See Carr v. District of Columbia*, 543 F.2d 917, 925–26 (D.C. Cir. 1976).  The Court need not resolve this dispute because plaintiff's motion was not filed "within a reasonable time," as required by Rule 60(c)(1).

A movant must offer sufficient justification for delaying a Rule 60(b) motion almost until the one-year deadline.  *See White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990).  Plaintiff argues that four grounds justify his delay.  First, he argues that much of the information he needed to establish fraud upon the court came from the *Johnson* litigation, to which he was not a party.  (Pl.'s Reply [158] at 2.)  Johnson appealed his case upon judgment by the District Court, and thus "the precise contours of the fraud upon the court that serves as the basis for Plaintiff's [R]ule 60 motion were unknown to him" until that appeal.  (*Id.*)  Second, plaintiff, who is proceeding *pro se*, has experienced "significant confusion" regarding the correct procedures to follow because the alleged fraud was visited upon multiple courts.  (*Id.* at 2–3.)  Third, because the order from the Court of Appeals granting him leave to file a Rule 60 motion was issued on March 19, 2009, he argues the dispositive question of timeliness is whether the twelve-day period from March 19 to the date of his filing constituted an unreasonable delay.  (*Id.* at 4.)  Finally, plaintiff argues he had to spend considerable time drafting his motion and obtaining the documents and records supporting his arguments.  (*Id.* at 3–4.)  The Court addresses each argument in turn.

---

[3] Plaintiff first filed by e-mailing his documents to the Court instead of using the Court's Electronic Document Filing System.  (Pl.'s Mot. for Relief [150-2] Ex. R.)  The clerk's office informed him the next day that he did not have permission to file electronically.  (*Id.*)  He submitted paper filings, which the Court received after March 31.  It is disputed whether plaintiff had permission to file electronically (Pl.'s Reply [158] at 1–2) and, if he did, whether sending filings to the Court by e-mail constitutes a valid filing.

*1. Information Needed for the Motion Was Unavailable*

Plaintiff asserts that much of the information required to establish fraud under Rule 60(b)(3) was unknown to him until a case to which he was not a party, *Johnson v. Maddox*, came before the Court of Appeals. (*Id.* at 2.) The *Johnson* litigation is relevant here, plaintiff argues, because fraud perpetrated in that case entered into plaintiff's own case. (Pl.'s Mot. for Relief [150] at 2–3.) The Court is not convinced that information from the *Johnson* case was actually unavailable to plaintiff.

Plaintiff's basic argument is that defendants submitted a fraudulent affidavit in his name in the *Johnson* case and then lied about the authenticity of that affidavit throughout those proceedings. (Pl.'s Mot. for Relief [150] at 6–10.) It is unclear how plaintiff remained unaware of this purported fraud and why the information he needed to establish the fraud remained unavailable until *Johnson v. Maddox* came before the Court of Appeals. (*See* Pl.'s Reply [158] at 2.) Plaintiff has submitted one exhibit related to the *Johnson* case as it was presented to the Court of Appeals—a brief written on behalf of the defendants in that case, some of whom are also defendants in plaintiff's case—but that exhibit is dated April 23, 2004, about four years before final judgment was entered in plaintiff's case. (Pl.'s Mot. for Relief [150-2] Ex. O.) Unless plaintiff was prevented from accessing the court filings in *Johnson v. Maddox* for the past five years (which he does not allege), the Court does not see how the appeal of the *Johnson* case is relevant to his claim of not having the information needed to support his argument.

The Court must reject plaintiff's claim that he did not have the information he needed to support his fraud argument. Plaintiff states that he was aware as early as 2003 that defendants may have perpetrated a fraud. (Pl.'s Mot. for Relief [150] at 10–11.)

6

Plaintiff testified before Magistrate Judge Facciola that the affidavit submitted on his behalf in the *Johnson* case was not actually his. (*Id.* at 10.) He later stated that though he was not prepared at that time to accuse anyone of fraud, he knew there was "something wrong." (*Id.* Ex. M at 67.) Thus, at the time of judgment in plaintiff's case in 2008, he had known for at least four years that a fraud may have occurred. Plaintiff's one-year delay in filing a Rule 60 motion therefore could not have been reasonable. *See Osborne*, 379 F.3d at 283 ("What constitutes a 'reasonable time' depends upon the facts of each case, taking into consideration . . . the practical ability of the litigant to learn earlier of the grounds relied upon . . . ."); *cf. United States v. Cleaver*, 319 F. App'x. 728, 731 n.2 (10th Cir. 2009) (two-year delay in filing Rule 60(b)(6) motion not reasonable when movant knew immediately of his claim at the time judgment was rendered). To the extent that plaintiff was "ambushed" and "thrown for a loop" during his cross-examination before Magistrate Judge Facciola (Pl.'s Mot. for Relief [150] at 11), the Court finds that mere surprise is insufficient grounds for a one-year delay, especially when the "ambush" in question occurred four years before judgment was rendered in plaintiff's case.

2. Pro Se *Movant Experienced "Significant Confusion"*

Plaintiff argues that the one-year delay in filing his Rule 60 motion resulted from the "unique nature of this case," which caused him to experience "significant confusion" in how to pursue his fraud claim. (Pl.'s Reply [158] at 2.) Because the alleged fraud was perpetrated upon the Equal Employment Opportunity Commission, three district court judges, and the Court of Appeals, he argues, he did not know where to file his motion,

7

even after researching the issue. (*Id.* at 2–3.) He ultimately filed with the Court of Appeals, which denied his motion without prejudice on March 18, 2009. (*Id.* at 3.)

To the extent plaintiff argues—coming as a *pro se* plaintiff with no formal legal training—that his level of legal ability serves as grounds for a more relaxed standard of reasonableness, the Court cannot validate such a proposition. Although the Supreme Court has relaxed certain standards and rules when confronted with *pro se* filings by prisoners in criminal cases, it "ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."[4] *McNeil v. United States*, 508 U.S. 106, 113 (1993).

Although the Supreme Court's language in *McNeil* does not appear to act as a complete bar to an untrained *pro se* litigant being held to a lower standard than a licensed attorney, this case does not present circumstances compelling such a standard. Plaintiff had been representing himself for almost five years when the final judgment was rendered in his case. (*See* Compl. [1] at 1; Order & J. [148] at 1.) During that time, he must have become aware of the Court's desire for speedy resolution of cases and the unforgiving standard for filing deadlines. He also must have developed a sense that the Court does not lightly forgive a lawyer's failure to research and follow the correct procedures regardless of how complex the issue is. If plaintiff truly was having difficulty determining the correct procedure, the Court finds it implausible that he could not have consulted with an attorney for a modest fee or asked one of the numerous lawyers he must have come into contact with as a former federal law enforcement agent.

---

[4] *McNeil* deals with a filing deadline that has an absolute time limit rather than with the more flexible "reasonableness" standard at issue here. Nonetheless, the Supreme Court's ruling was predicated on "evenhanded administration of the law," which remains a valid principle here. 508 U.S. at 113 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

*3. Time Period for Measuring Reasonableness of Delay*

Plaintiff argues that, because he originally filed a Rule 60(b) motion with the Court of Appeals, and because it did not rule on his motion until March 18, 2009, the reasonableness of his delay in filing should be measured from that date rather than from when final judgment was rendered in his case on March 31, 2008.  (Pl.'s Reply [158] at 3–4.)  Plaintiff does not cite and the Court has been unable to find any authority supporting that proposition.  The timeliness of a Rule 60 motion is universally measured from the date of the judgment being attacked.  *See McMillian v. District of Columbia*, 241 F.R.D. 12, 14 (D.D.C. 2004) (collecting cases).  As explained above, the Court will not excuse a *pro se* plaintiff's procedural missteps in a civil case.  Plaintiff argues he had to obtain leave from the Court of Appeals to file his Rule 60 motion after appealing his case (Pl.'s Reply [158] at 3), but he should have considered how an appeal would affect the timeliness of a Rule 60 motion.  This conclusion also disposes of plaintiff's claim that his delay is excused by his need to take time to draft his motion and obtain supporting documents and records once the Court of Appeals granted him leave to file.  (*Id.* at 4.)

*4. Conclusion*

Plaintiff filed a Rule 60 motion with little over an hour before the one-year time limit ran out.  (Pl.'s Mot. for Relief [150-2] Ex. R.)  Plaintiff did not adequately justify his delay and was already aware of the grounds upon which his motion relied.  Balancing these factors against the interest in finality and prejudice to the defendants, *Osborne*, 379 F.3d at 283, the Court denies plaintiff's claims arising under Rule 60(b) as untimely filed.

*B. Fraud on the Court*

Plaintiff alleges that defendants' submission of a fraudulent affidavit in the *Johnson* litigation constituted fraud on the court when the Court "relied upon the fraudulent assertions of defendants" arising out of that separate case. (Pl.'s Mot. for Relief [150] at 2–3.)

Here, plaintiff's claim of fraud on the court must be denied. First, plaintiff does not provide clear and convincing evidence of conduct that rises to the level of fraud on the court or of knowing or reckless misstatements on the part of defendants and their counsel. Second, he was aware of a possible fraud throughout the proceedings and thus was not prevented from presenting his case fully and fairly.

*1. Plaintiff Does Not Prove Fraud On The Court By Clear And Convincing Evidence*

To constitute fraud on the court, the fraud must be part of an "unconscionable plan or scheme," *England*, 281 F.2d at 309, or "subvert the integrity of the court itself." *Synanon Church*, 579 F. Supp. at 974. Such a plan cannot be garden variety fraud; it must rise to the level of bribing a judge, jury tampering, designing a scheme intended to deceive the court, or involvement of an officer of the court in perpetrating a fraud. *See Lockwood*, 46 F.R.D. at 632 (collecting cases). The fraudulent act must be "intentionally false, wilfully blind to the truth, or [] in reckless disregard for the truth . . . ." *Demjanjuk*, 10 F.3d at 348. Plaintiff presents a litany of allegations about the purported fraud (Pl.'s Mot. for Relief [150] at 2–21), but fails to provide clear and convincing evidence that the alleged misrepresentations meet these requirements. *See Shepherd*, 62 F.3d at 1476–77.

*a.* Plaintiff states that defendants lied when they told the Court of Appeals, Judge Urbina, and Magistrate Judge Facciola that they had submitted plaintiff's affidavit to the EEOC and had in fact not done so. (Pl.'s Mot. for Relief [150] at 6, 14–15.) However, plaintiff's claims are nothing more than bare allegations and hypotheses. For example, he asserts that the status of one of defendants' attorneys as a deputy in the Office of Corporation Counsel by itself constitutes proof that an officer of the court asserted that plaintiff's affidavit was submitted to the EEOC while knowing that assertion to be false. (*Id.* at 6.) Although her status may indicate that she is an officer of the court, it does nothing to prove the other elements of plaintiff's assertion. Such *non sequiturs* permeate plaintiff's motion, but nowhere does he provide clear and convincing evidence that defendants' representations were more than mere oversight or mistake.

*b.* Plaintiff asserts that defendants falsely represented the authenticity of plaintiff's affidavit before Magistrate Judge Facciola. (*Id.* at 7.) First, he states that an affidavit submitted by one of the defendants' attorneys, Gail Davis, proves that an attorney at DCOIG perjured herself when she testified about the authenticity of plaintiff's affidavit. (*Id.* at 9.) He also claims that the information in the affidavit was "deliberately withheld from the Facciola court." (*Id.* at 8.) Second, he provides e-mails between himself and the DCOIG attorney that are supposed to prove the falsity of her testimony. (*Id.* Exs. B, C.) Even if the attorney's statements were false, plaintiff neglects that the events about which she testified occurred in 2000, three years before her testimony. (*See id.* at 9.) Plaintiff has failed to clearly and convincingly prove that the discrepancies resulted from anything more than mistake or the attorney's faulty memory. Furthermore,

11

if defendants failed to give information to Magistrate Judge Facciola, plaintiff submits no proof that this omission was knowing or reckless.

 *c.* Plaintiff asserts that the affidavit submitted in his name was a forgery. (*Id.* at 10.) His evidence consists of typographic differences between the purported forgery and documents that he submitted, his own testimony before Magistrate Judge Facciola, and circumstantial evidence regarding the dates of the various affidavits and signatures to which plaintiff refers. At best, plaintiff's evidence raises the mere possibility that defendants engaged in forgery, but he does not present the sort of unassailable evidence required to overcome the finality of a judgment. *Cf. Lockwood*, 46 F.R.D. at 634 ("[T]he law favors an end to lawsuits rather than a free reopening and retrial of them.").

 *d.* Plaintiff further asserts that defendants perpetrated fraud on the EEOC when they made reference to plaintiff's affidavit but had not submitted it to the EEOC. (Pl.'s Mot. for Relief [150] at 17.) Again, plaintiff makes only bare allegations and does not clearly and convincingly prove that defendants' statement was more than mere mistake.

 *e.* Plaintiff takes issue with the Court's reliance on Gail Davis's statement in a 2004 affidavit that "[plaintiff] was free to submit his affidavit on Johnson's or his own behalf and independent from the OIG's position statement." (*Id.* at 18, Ex. P.) He argues that none of the defendants alerted plaintiff that his affidavit had not been sent to the EEOC. (*Id.* at 18.) Although plaintiff might have been less likely to submit his affidavit without knowledge that it had not already been submitted, he fails to show an affirmatively false statement on Davis's part or that any defendant had an affirmative duty to tell him the affidavit had not been sent.

*f.* Plaintiff claims that Gail Davis lied in a 2004 affidavit when she stated that plaintiff was out of his office when she met with defendants Maddox and Andersen. (*Id.* at 19, Ex. P.) Plaintiff provides no proof that this statement was untrue. He merely states that Davis made no attempt to contact him before or during these meetings. Even if her statement was not true, plaintiff provides no clear and convincing evidence that her misstatement was more than a mistake or lapse of memory.

*g.* Plaintiff argues that Davis fraudulently stated in a 2004 affidavit that plaintiff edited the affidavit she prepared on his behalf. (*Id.* at 19–20, Ex. P.) He argues this statement is fraudulent because he clearly refused to sign the affidavit she prepared and instead drafted his own. (*Id.* at 20.) Here, Davis may have been under the impression that plaintiff was cutting out her words in the affidavit and replacing them with his own, which is a valid definition of "edit." She may also have mistakenly used the word "edit" when she meant something else. Plaintiff does not clearly and convincingly prove any knowing or reckless deception on her part.

*h.* Plaintiff argues that Branson and Andersen were working on the allegedly forged affidavit two weeks after the EEOC filing deadline had passed for the sole purpose of providing Maddox a stronger legal defense in the *Johnson* case. (*Id.* at 20.) He also argues that they circumvented EEOC instructions only with respect to plaintiff's affidavit, which evinces fraudulent intent. (*Id.* at 21.) Plaintiff provides no evidence to support these conclusory assertions.

*i.* Plaintiff makes much of the fact that officers of the court were involved in some of the alleged misrepresentations. (Pl.'s Reply [158] at 10–13.) Even if they did make misrepresentations, their status as officers of the court is not enough to prove fraud on the

13

court.  Some form of intentional misconduct must be demonstrated.  *See Demjanjuk*, 10 F.3d at 348; *In re Intermagnetics Am., Inc.*, 926 F.2d 912, 916–17 (9th Cir. 1991).  As explained above, plaintiff has failed to clearly and convincingly show that any intentional misconduct has occurred.

  *j.* Plaintiff's "newly discovered evidence" is similarly deficient.  The affidavit by Robert Isom and accompanying evidence are supposed to prove that the re-inspection of plaintiff's division at DCOIG, which formed the basis of his termination, was pretextual. (*See* Pl.'s Mot. for Relief [150] at 21–27, Exs. A-1 to -6.)  Even assuming these exhibits prove fraudulent acts by the defendants, they do not show fraud on the court.  Plaintiff does not provide clear and convincing evidence that defendants created any of the documentary evidence for the purpose of deceiving this or any other court, nor that defendants submitted these documents to the Court while knowing they were false.

  To the extent that plaintiff's new evidence supports a Rule 60(b)(2) motion for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," such a motion would be barred as untimely.  As explained above, plaintiff's motion was not filed "within a reasonable time."  FED. R. CIV. P. 60(c)(1).

*2. Plaintiff Was Able to Present His Case Fully and Fairly*

  In *Reintjes*, the First Circuit denied an independent action for relief from judgment when the movant only submitted proof of an adverse witness's perjury at trial. 71 F.3d at 46.  The court reasoned that perjury did not amount to fraud on the court in part because the movant had the opportunity to counteract perjury through discovery and

cross-examination.[5] *Id.* at 49. This case presents an analogous situation. Ever since the *Johnson* trial in 2003, plaintiff was aware of possible fraud by defendants. As a witness in that case, he challenged the authenticity of the affidavit that was submitted in his name. (Pl.'s Mot. for Relief [150] Ex. M.) He stated that, although he was not prepared to level any accusations of fraud at that time, he knew there was "something wrong." (*Id.* at 11, Ex. M at 67.) Thus, during the preparation for trial in his own case in 2007, plaintiff had both knowledge of possible fraud and the opportunity to engage in discovery to uncover fraud and to raise allegations thereof. Because the alleged fraud did not prevent plaintiff from presenting his case fully and fairly, *Reintjes*, 71 F.3d at 48, his claim of fraud on the court must be denied.

*C. Plaintiff's Motion for an Order to Schedule Discovery*

Plaintiff requests that the Court order discovery to permit him to further develop his claims of fraud on the court.[6] Plaintiff cites to *Pearson v. First NH Mortgage Corp.*, 200 F.3d 30, 35 (1st Cir. 1999), for the proposition that the Court has the discretion to permit discovery proceedings "once the record evidence demonstrates a 'colorable' claim of fraud." Plaintiff does not present a colorable claim, therefore discovery is denied.

"Colorable" is defined as "appearing to be true, valid, or right." BLACK'S LAW DICTIONARY 282 (8th ed. 2004). Plaintiff has so far presented only bare allegations and evidence that points to the mere possibility of fraud on the court, but presents no evidence

---

[5] The *Reintjes* court does imply that involvement of an officer of the court in perjury could constitute fraud on the court even if the adverse party had the opportunity to cross-examine witnesses. 71 F.3d at 49. Although plaintiff alleges perjury and submission of fraudulent documents by officers of the court, he fails to provide clear and convincing evidence of intentionally or recklessly false statements or conduct. *Demjanjuk*, 10 F.3d at 348.

[6] Because plaintiff's Rule 60(b)(3) claim of fraud or misrepresentation is untimely, discovery at this point could only support a claim of fraud on the court.

15

that makes his claim "appear to be true." *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (bare allegations of parallel conduct and conspiracy are insufficient to state a claim under the Sherman Act). To permit discovery now would be to subject defendants to a costly and time-consuming process without an iota of rational justification, and the Court will not engage in such an abuse.[7]

Plaintiff's request for discovery is also undermined by the fact that many of his claims revolve around issues that he should have addressed at or before trial. Plaintiff was aware of a possible fraud as early as 2003. (Pl.'s Mot. for Relief [150] at 10–11.) He had every opportunity before trial to engage in discovery to determine the existence of fraud and to raise that issue with the Court. The defendants should not be subjected to discovery when plaintiff failed to take advantage of that opportunity.

*D. Leave to File Separate Independent Actions For Fraud Upon Other Courts*

This Court does not have jurisdiction to grant or deny leave to request relief from judgments rendered by other courts.

**IV. Conclusion**

For the foregoing reasons, the plaintiff's Motion for Relief from Judgment [150] and Motion for Discovery [159] will be DENIED.

A separate order shall issue this date.

---

[7] Although plaintiff correctly states that "the law favors discovery and correction of corruption of the judicial process even more than it requires an end to lawsuits" (Pl.'s Reply [161] at 3 (citing *Lockwood v. Bowles*, 46 F.R.D. 625, 634 (D.D.C. 1969)), plaintiff appears to misunderstand the meaning of this proposition. It refers to the absence of a time limit on filing a claim for fraud on the court, not to any standard for permitting discovery.

**Date**

January 6, 2010.

                                                                         _____/s/_____
                                                                      ROYCE C. LAMBERTH
                                                                       Chief Judge
                                                                       United States District Court